<table>
<tr><td>

DISTRICT COURT, DENVER COUNTY COLORADO

Court Address:
1437 Bannock St # 256
Denver, CO 80202

</td><td>

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Jan  5 2012  4:01PM MST
Filing ID: 41716252
Review Clerk: Matthew Palmer

</td></tr>
</table>

| | |
|---|---|
| Plaintiff:        LANDIS EDWARDS, individually and on behalf of all others similarly situated<br><br>v.<br><br>Defendants:    ZENIMAX MEDIA, INC., a Delaware Corporation, and BETHESDA SOFTWORKS, LLC, a Delaware Limited Liability Company | ▲ COURT USE ONLY ▲ |
| Name:            Steven L. Woodrow #43140<br>Address:         999 W. 18th Street, Suite 3000<br>                      Denver, CO 80202<br>Phone Number:   303/357-4878<br>email:             swoodrow@edelson.com | Case Number:<br><br>Div:          Ctrm.: |

**COMPLAINT AND JURY DEMAND**

Plaintiff Landis Edwards, on behalf of himself and all others similarly situated, hereby files his Class Action Complaint and Jury Demand against Defendants Zenimax Media, Inc. ("Zenimax") and Bethesda Softworks, LLC ("Bethesda") (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action seeking damages and injunctive relief based on Defendants' deceptive and unlawful conduct in designing, manufacturing, marketing, distributing and selling a defectively designed video game to consumers in Colorado and throughout the nation. Jurisdiction is proper in this District Court, as it is a court of general jurisdiction.

2.      Venue is proper in Denver County, Colorado, as Plaintiff resides in Denver County, Plaintiff purchased his copy of Defendants' defective video game in Denver County, and many of the operative facts giving rise to Plaintiff's complaint occurred within Denver County.

## PARTIES

3.      Plaintiff Landis Edwards is a natural person and citizen of the State of Colorado.

4.      Defendant ZeniMax Media, Inc. is a corporation incorporated and existing under the laws of the state of Delaware with its principal place of business located in Rockville, Maryland.

5.      Defendant Bethesda Softworks LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Rockville, Maryland.  Defendant transacts business in Florida and throughout the country. Bethesda is a wholly owned subsidiary of Defendant ZeniMax.

## GENERAL ALLEGATIONS

### The *Elder Scrolls* Franchise

6.      Bethesda is an American video game developer and publisher.  Bethesda has developed a broad range of games, including *The Elder Scrolls* franchise, a single-player role - playing video game series.

7.      Games within *The Elder Scrolls* series are available on multiple gaming platforms, including the PlayStation 3 and Xbox 360 consoles, as well as Windows-based personal computers.  In an *Elder Scrolls* game, a player typically controls and develops a single in-game character (often referred to as an "avatar") through a series of "quests" in a fantasy gaming world.

8.      *The Elder Scrolls IV: Oblivion* is the fourth full installment of *The Elder Scrolls* series.  Defendants originally released *Oblivion* on March 20, 2006 for Windows PCs and the Xbox 360 gaming console.  Defendants released the game for the PlayStation 3 console on March 20, 2007.

9.      In Autumn, 2007, Defendants released *The Elder Scrolls IV: Oblivion Game of the Year Edition* for all three platforms.  The *Game of the Year Edition* featured the original *Oblivion* video game, as well as two previously-released "expansion packs" that allegedly offered numerous hours of additional gameplay.

### Defendants' Representations Regarding the Gameplay of *Elder Scrolls IV: Oblivion*

10.     The *Oblivion* video game purports to offer open-ended or "sandbox" gameplay, allowing players to freely roam the gaming world and perform various tasks, develop individual characters, or simply explore.  While *Oblivion* features a linear main quest, Defendants encourage players to postpone or ignore the quest for as long as the player wishes to explore the entirety of the gaming world.

11.      At all relevant times, Defendants engaged in an extensive advertising and marketing campaign in support of the *Oblivion* video game.  One of the primary features emphasized by Defendants in their advertisements was the longevity of the *Oblivion* video game and the sheer size of the virtual gaming world.  Bethesda prominently advertised that the game offered an expansive, "free-form" world, with "open-ended" gameplay that allowed the player to explore with little limitation.

12.      For example, Defendants described the *Oblivion* video game in an online advertisement, which appeared (and still appears) on numerous websites such as Amazon.com and video game retailer Gamestop.com, as featuring:

> Open-ended game play and short challenges: The enormous world of *Oblivion* is open, allowing players to explore at their own pace.  Players will encounter shorter challenges such as fighting bandits, mixing potions, and creating magic along the way to unraveling the main quest.

13.      Similarly, in the product description for the *Elder Scrolls: Oblivion Game of the Year Edition* appearing on Amazon.com, Defendants state that:

> Oblivion features a powerful combination of free-form gameplay, unprecedented graphics, cutting edge AI, character voices by acting legends Patrick Stewart, Sean Bean, Terrance Stamp, and Lynda Carter, and an award-winning soundtrack.  Gamers can choose to unravel Oblivion's epic narrative at their own pace or explore the vast world in search of their own unique challenges.

14.      The instruction manual for each version of the *Oblivion Game of the Year Edition* describes the gameplay as follows:

> With the Elder Scrolls, our goal has always been to create a game that offers unlimited possibilities.  A game where you could be whoever you wanted and to do whatever you wanted.  Live another life, in another world has been our motto, and we want you to do just that.
>
> So if you like wandering and exploring, that's what you should do.  If you simply want to complete the main quest and feel like you "finished" the game, then you can do just that.  Most folks will find themselves somewhere in between, and fortunately there's a lot of wandering and exploring involved in finishing the main quest.

15.      The terms "free-form," "open-ended," and "open-world," gameplay have a distinct and tangible meaning in the video gaming community, including to Plaintiff and members of the Class.  Gamers generally understand that such terms describe a game

environment that allows players to play creatively, free of artificial structural constraints, and with there being "no right way" to play the game.  Because only a small number of games offer this type of gameplay, many gamers are particularly attracted to true open-world, "sandbox" games, and game developers such as Bethesda use these descriptors to induce gamers to purchase their video games.

16.     In addition, character development is a primary element of the *Oblivion* video game.  At the beginning of the game, the player selects a character from one of many different "races" and customizes their character's appearance.  The player then creates one or more "save files" that allow the user to save his or her character's progress throughout the game on their console's hard drive.

17.     One of the player's perpetual objectives in the game is to improve their character's skills, which are numerical representations of the character's ability in certain areas. The game rewards players with "perks" when their character reaches certain numerical levels in each skill.

18.     Because a player can best develop his or her character by performing tasks and missions outside of *Oblivion's* main quest, the focus on character development encourages players to spend substantial amounts of time exploring the gaming world to improve their character's skill levels.

19.     Defendants encourage consumers to spend substantial amounts of time developing individual characters.  Indeed, on its official blog, Bethesda sponsored an "Oblivion Iron Man" contest that offered a prize to the player with the longest single-character gameplay time, which Defendants presumed would exceed 1000 hours.

20.     As a result of Defendants' advertisements and marketing efforts, consumers purchased the *Oblivion* video game with the expectation that it would offer expansive, open-ended gameplay with "unlimited opportunities" for exploration and character development.

**<u>The Animation Defect</u>**

21.     Contrary to the representations and advertisements of Defendants, the length, scope, and functionality of the *Oblivion* video game is severely limited by an inherent design defect that, to the player, unexpectedly occurs during gameplay and effectively shuts down a player's existing game once manifested.  Despite its knowledge of the problem, Defendants have taken no actions to correct the defect for existing players, and continue to sell the *Oblivion* video game without notifying future purchasers of the defects inherent in the game.

22.     Soon after its initial release, consumers began to experience and contact Defendants about major technical issues affecting the performance of the *Oblivion* video game. These "glitches" ranged in severity, from general slowing of gameplay, to screen "freezes" that

4

forced players to reset their consoles or computers, to more serious problems that permanently shut down the game and prevented players from progressing further.

23.     Most seriously, the game suffers from a universal animation defect (the "Animation Defect") – commonly referred to in the gaming community as the "abomb" or "a-bomb" – that, once manifested, effectively ends the player's game and forces him or her to restart *Oblivion* from scratch with an entirely new character.  The Animation Defect occurs suddenly, without warning, sometimes after as little as 200 hours of gameplay.

24.     The Animation Defect causes all "secondary" animations to freeze, including spell effects, doorways, gateways, bridges, and traps, among other things.  While the lack of animation in these elements may seem purely aesthetic, the actual result is crippling to a player's quest, general gameplay, and overall use of the game.

25.     As a result of the Animation Defect, players are unable to open doors or gates, drop bridges, move elevators, or perform basic character animations that are essential to progressing in the game.  Because nearly every "quest" – including *Oblivion's* main quest – requires that the player open doorways, gates, and effectively cast spells, the player cannot progress in the game following the onset of the Animation Defect.  Accordingly, the player's only option is to restart the game with an entirely new character.

26.     The Animation Defect is particularly damaging to *Oblivion* game players because it often manifests after players have invested significant amounts of time and effort building their personal characters, a primary goal in the *Oblivion* video game.

27.     Every version of the *Oblivion* video game suffers from the Animation Defect.  For the vast majority of consumers, including all users of the *Oblivion* video game for the PlayStation 3 and Xbox 360 and, there is no remedy for the defect for any version of the *Oblivion* video game.

28.     Several *Oblivion* game players have identified the suspected cause of the Animation Defect on Bethesda's official forums.  Based on these consumer investigations, it is commonly understood that each *Oblivion* "save file" contains a four byte number sequence that continuously increases during gameplay.  When the number reaches a certain value, the Animation Defect is suddenly triggered, and values beyond the trigger value increase the severity of the defect.

29.     Said differently, as a user continues to play the *Oblivion* video game, each animation that occurs in the game adds to an internal "counter."  When the counter reaches its maximum level – an inevitable occurrence with continued gameplay – the Animation Defect suddenly occurs and the user's game is effectively ended.

30.     Players are thus forced to play *Oblivion* "under the gun" – they must rush to finish the game's main quest before the Animation Defect occurs, a far cry from the open-ended gameplay, "enormous world," and "unlimited possibilities" promised by Defendants.

31.     Defendants have offered no way to fix the Animation Defect on any version of the *Oblivion* video game without forfeiting all progress in the game.  Once the Animation Defect has occurred, the *Oblivion* game will not function properly, and the player is forced to begin a new game from scratch.  Even then, the Animation Defect will inevitably reoccur after the player creates and develops a new character and quest.

32.     Defendants have long been aware of the Animation Defect and its crippling effect on gameplay.  Despite their knowledge of the defect, Defendants have refused to provide a patch, replacement product, or any other remedy.

33.     For example, in or around March, 2007, a Bethesda employee posted the following comment on Bethesda's official forums, forums.bethsoft.com, in response to consumer complaints about the Animation Defect:

> So here's the deal
> Our team is well aware of this issue, but it is one we have not been able to resolve because of the nature of the problem and any fixes related to it.  We are continuing to look into it and will let folks know if/when we are able to address it in the future.

34.     Soon thereafter, a member of Bethesda's technical support staff provided the following response to a consumer's question about the Animation Defect, which was then posted on Bethesda's official forum, forums.bethsoft.com:

> Hello,
>
> This issue will not be fixed.
> There is no official patch or fix to correct this issue from within the game.  We are aware of the issue, but it is one we have not been able to resolve because of the nature of the problem and any fixes related to it.  We are continuing to look into it and will let folks know if/when we are able to address it in the future.
>
> . . .
>
> Best Regards,
> James H. at Bethesda Softworks Technical Support
> Support04@bethsoft.com

35.     While Defendants admitted their knowledge of the Animation Defect on Bethesda's forums in response to complaints from current *Oblivion* players, Defendants intentionally did not further publicize or otherwise disclose the existence of the defect to a wider audience of potential purchasers.  Accordingly, consumers were not made aware of the Animation Defect prior to purchasing the *Oblivion* video game.

36.     Defendants have not remedied the Animation Defect for any purchaser of the *Oblivion* video game.  Nor have Defendants undertaken any actions to notify past or future purchasers of the inherent defects in the *Oblivion* game.  Rather, consumers are led to believe that they will experience expansive, unlimited gameplay, only to unexpectedly experience the Animation Defect after developing a unique character and quest.

37.     Defendants have continued to release new versions of *Oblivion* with full knowledge of – and without fixing – the Animation Defect, including *Oblivion: Game of the Year Edition* and the recently released *Oblivion: 5th Anniversary Edition*, which Defendants released on July 12, 2011.

38.     Defendants continue to market the longevity and "free-form" nature of the *Oblivion* video game despite their knowledge of the Animation Defect, an inherent defect that Defendants know will shut down the game after only moderate levels of gameplay.

**Damages Suffered by Purchasers of the *Oblivion* video game**

39.     The existence of the Animation Defect significantly decreases the value of the *Oblivion* video game to consumers.  As described above, games that provide true open-ended, expansive gameplay are highly valued by gamers and are worth more to consumers than games limited by inherent gameplay defects.

40.     Based on Defendants' advertisements and representations, consumers purchased the *Oblivion* video game with the expectation that it would offer open-ended, free form, expansive gameplay that could be experienced at the player's own pace.  However, the Animation Defect severely limits *Oblivion's* gameplay after moderate use, resulting in consumers receiving a less valuable product than they initially paid for and expected.  Had consumers known of the inherent defects in the *Oblivion* video game prior to purchase, they would not have purchased *Oblivion* or would have paid less money to purchase the game.

41.     Consumers are further harmed because the Animation Defect diminishes the resale value of the *Oblivion* video game on the secondary market.  Traditionally, the secondary market for video game sales is strong, allowing consumers to sell used video games to traditional retailers and directly to other consumers through online transactions.  However, the existence of the Animation Defect makes it more difficult to resell the *Oblivion* video game, and potentially exposes the seller to liability to other consumers if the seller does not disclose the Animation Defect prior to resale.  Sellers are thus left with the unenviable choice of similarly deceiving buyers and promoting the *Oblivion* video game like Defendants, or disclosing the Animation Defect and suffering from the resulting decrease in value on the secondary market.

## FACTS RELATING TO PLAINTIFF EDWARDS

42.     Plaintiff Landis Edwards purchased *Oblivion: Game of the Year Edition* for the PlayStation 3 video game console in or around February, 2010 from a GameStop retail store.

43.     Prior to purchasing the *Oblivion* video game, Plaintiff viewed Defendants' online and print advertisements and representations regarding the scope, longevity and nature of the gameplay purportedly featured in the *Oblivion* video game.  The purportedly open-ended gameplay of *Oblivion* was the primary reason that Plaintiff purchased the game.

44.     Prior to purchasing *Oblivion*, Plaintiff was not aware that every copy of the *Oblivion* video game, including *Oblivion: Game of the Year Edition* for the PlayStation 3 console, suffered from numerous bugs and defects, including the Animation Defect, nor did Plaintiff have any reasons to know of the existence of the Animation Defect.

45.     Had Plaintiff known about the Animation Defect and its effect on *Oblivion's* gameplay, he would not have purchased the *Oblivion* video game, would have paid less money for the game, or would have attempted to return or exchange the game within the appropriate time period.

46.     Plaintiff began playing his copy of *Oblivion* in or around February, 2010.  As encouraged by Defendants, Plaintiff created and began to develop a unique character within the game.

47.     Plaintiff experienced numerous technical problems while playing the *Oblivion* video game.  Among other things, Plaintiff's copy of *Oblivion* continuously "froze" after only short periods of gameplay, the framerate of Plaintiff's game dropped to less than one frame per second, non-playable characters repeatedly failed to function and prevented Plaintiff from beginning or completing certain quests, items repeatedly and permanently disappeared from Plaintiff's in game inventory, and Plaintiff experienced graphical stuttering, pixilation, strobing, and eventual freezing.  As a result of these numerous technical defects, Plaintiff was forced to frequently restart his PlayStation 3 console and forfeit progress in the game, and eventually had to perform a "hard reset" of the PlayStation 3 console which caused Plaintiff to lose data and save files on his PlayStation 3 hard drive.

48.      Plaintiff first started experiencing serious technical defects with the *Oblivion* video game after approximately 125-150 hours of gameplay.  After approximately 200 hours of gameplay, Plaintiff suddenly experienced the Animation Defect on his copy of the *Oblivion* video game.  After the Animation Defect occurred, Plaintiff was unable to trigger numerous animations within the game, and was prevented from opening doors and gates that would allow him to progress further in the game.

49.     Plaintiff restarted his PlayStation 3 console and re-loaded his saved game. Almost immediately after Plaintiff's game loaded, the Animation Defect occurred again and prevented Plaintiff from progressing in the *Oblivion* game.  Plaintiff repeated this process several times, and each time the Animation Defect occurred and continued to prevent further progress in the game.

50.     As a result of the Animation Defect, Plaintiff was forced to abandon his saved game and forfeit his original character and progress in the game.  Plaintiff was unable to recover any data relating to his initial *Oblivion* save file.

51.     Because Plaintiff is now aware of the existence of the Animation Defect and the fact that it will suddenly occur and ruin any subsequent character and saved game file that Plaintiff creates, Plaintiff no longer plays the *Oblivion* video game solely because of the Animation Defect and other glitches that Plaintiff has experienced.

## CLASS ALLEGATIONS

52.     Plaintiff Landis Edwards brings this action pursuant to Colo. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons or entities residing in the State of Colorado who purchased any version of the *Elder Scrolls IV: Oblivion* video game.

The following persons are excluded from the Class: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) Defendants' Counsel; 4) persons who properly execute and file a timely request for exclusion from the Class; 5) Plaintiff's counsel; (6) any person who has had their claims fully and finally adjudicated or otherwise released; and (7) the legal representatives, successors or assigns of any such excluded persons.

53.     Upon information and belief, the Class consists of millions of members such that joinder of all members is impracticable.

54.     Plaintiff's claims are typical of the claims of all of the other members of the class. Plaintiff and each Class member were affected in substantially the same way by Defendants' fraudulent, misleading, and unlawful marketing and shipment of a defective product.

55.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

56.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and all of the other members of the Class.  Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendants' wrongful conduct.

57.     Common questions of law and fact exist as to all members of the Class and such questions predominate over any questions affecting Plaintiff or individual members.  Common questions for the Class include but are not limited to:

a.  Whether the *Oblivion* video game fails to conform to Defendants' advertised product specifications;

b.  whether Defendants made false or misleading statements about the scope or capabilities of the *Oblivion* video game;

c.  whether Defendants knowingly concealed the defective design of the *Oblivion* video game;

d.  whether Defendants refused to remedy or patch the Animation Defect, despite knowing of its existence;

e.  whether the Animation Defect led to a diminution in the value of the *Oblivion* video game;

f.  whether Defendants made representations that the *Oblivion* video game had characteristics, uses, benefits, or qualities which it did not have;

g.  whether Defendants' conduct as described herein violated the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*;

h.  whether Defendants' conduct as described herein constituted fraud in the inducement;

i.  whether Defendants' conduct described herein resulted in unjust enrichment to Defendants.

58.  Plaintiff will fairly and adequately protect the interests of the other members of the Class, his claims are typical of the other members of the Class, and he has retained counsel competent and experienced in similar class action litigation.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

59.  Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and litigants, and promotes consistency and efficiency of adjudication.

### FIRST CLAIM FOR RELIEF
### Violation of C.R.S. § 6-1-101 *et seq.*

60.  Plaintiff hereby incorporates all previous allegations contained in this Complaint as though fully set forth herein.

61.     The Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, prohibits any "person" from engaging in a deceptive trade practice in the course of such person's business, vocation or occupation.

62.     As "persons" under CCPA § 6-1-102(6), Defendants are prohibited from engaging in any deceptive trade practices in the course of their business dealings.

63.     As described herein, Defendants engaged in deceptive and unfair practices as defined by C.R.S. § 6-1-101 *et seq.*, to the detriment of Plaintiff and the Class.

64.     By representing that the *Oblivion* video game offered open-ended, free-form gameplay, "unlimited opportunities," and gameplay that can be experienced at the player's own pace, and by failing to disclose the existence of the Animation Defect and its effect on gameplay, Defendants have violated the CCPA in at least the following respects:

      a.     In violation of section 6-1-105(1)(e), Defendants have knowingly made a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the *Oblivion* video game;

      b.     In violation of section 6-1-105(1)(g); Defendants have represented that the *Oblivion* video game is of a particular standard, quality, or grade while Defendants know that it is of another;

      c.     In violation of section 6-1-105(1)(i), Defendants have advertised the *Oblivion* video game with the intent not to sell it as advertised; and

      d.     In violation of section 6-1-105(1)(u), Defendants have failed to disclose material information concerning the *Oblivion* video game despite the fact that the information was known at the time of the advertisement and sale of *Oblivion* to Plaintiff and the Class.

65.     Defendants' unlawful and deceptive practices significantly impacts the public as actual and/or potential consumers of Defendants' good and services, and affects such consumers in a uniform way.

66.     Defendants concealed material facts regarding the *Oblivion* video game from Plaintiff and the members of the Class, including the fact that the Animation Defect prevented players from experiencing the expansive, open-ended, unlimited gameplay in accordance with Defendants' advertised performance specifications.  This type of information is relied upon by consumers in making purchase decisions, and is material to the decision to purchase a costly video game.  Had Defendants disclosed such information, it would have been made known to Plaintiff and members of the Class through the marketing and advertising presented by Defendants, and Plaintiff and the members of the Class would not have purchased the *Oblivion* video game, would have paid less money for the game, or would have attempted to return or exchange the game within the appropriate time period.

67.     As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff and members of the Class suffered damages in the form of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an *Oblivion* video game with and without the Animation Defect.

68.     Plaintiff, on behalf of himself and each member of the Class, seeks damages, injunctive relief, and any other relief allowed under the CCPA.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**

69.     Plaintiff hereby incorporates all previous allegations contained in this Complaint as though fully set forth herein.

70.     Under C.R.S. 4-2-314, a warranty of merchantability is implied in the sale of goods by a merchant who deals in goods of that kind.  In particular, goods must be fit for the ordinary purposes for which such goods are used.

71.     At the time Defendants designed, manufactured, and sold the *Oblivion* video game for use by Plaintiff and the Class, Defendants knew of the uses for which the *Oblivion* video game was intended, and impliedly warranted it would be of merchantable quality and fit for its intended use.

72.     Defendants' implied warranty included that the *Oblivion* video game would offer free-form, open-ended, expansive gameplay, and be free of inherent defects that prevented such gameplay.  In actuality, the *Oblivion* video game suffered from the Animation Defect, such that the *Oblivion* video game was not of merchantable quality or fit for its intended use.

73.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered damages, including the loss of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an *Oblivion* video game with and without the Animation Defect.

**THIRD CLAIM FOR RELIEF**
**Fraud by Omission**

74.     Plaintiff hereby incorporates all previous allegations contained in this Complaint as though fully set forth herein.

75.     Defendants represented and Plaintiff and the Class reasonably expected that the *Oblivion* video game would provide open-ended, free-form, extended gameplay, and Defendants further represented, and Plaintiff and the Class reasonably expected that the *Oblivion* video game would be released without major undisclosed defects and glitches.  This is a reasonable and objective consumer expectation for the *Oblivion* video game given Defendants' representations.

76.     Defendants knew that they were unable or unwilling to provide the *Oblivion* video game as represented to consumers, and further knew that they were unable or unwilling to provide the *Oblivion* video game to consumers without the Animation Defect.

77.     Defendant concealed from and failed to disclose to Plaintiff and the Class the existence of the Animation Defect, and their inability or unwillingness to remedy the Animation Defect once consumers purchased the *Oblivion* video game.

78.     Defendants were under a duty to Plaintiff and the Class to disclose the existence of the Animation Defect, or its unwillingness or inability to remedy the Animation Defect after consumers purchased the *Oblivion* video game, because:

    a.  Defendants were in a superior position to know the true state of facts about the Animation Defect and its impact on the gameplay of the *Oblivion* video game;

    b.  Plaintiff and the Class Members could not reasonably have been expected to learn or discover the existence of the Animation Defect or its crippling effect on the gameplay of the *Oblivion* video game prior to purchase; and

    c.  Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the existence of the Animation Defect or its impact on the gameplay of the *Oblivion* video game.

79.     The facts concealed or not disclosed by defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the *Oblivion* video game or pay a lesser price for it.  Had Plaintiff and the Class known of the existence of the Animation Defect and Defendants' inability or unwillingness to remedy the Animation Defect, they would not have purchased the *Oblivion* video game or would have paid less for it.

80.     Defendants concealed or failed to disclose the true nature of the *Oblivion* video game and the Animation Defect in order to induce Plaintiff and the Class to purchase the *Oblivion* video game.  Plaintiff and the Class justifiably relied on the omission to their detriment. This detriment is evident from Plaintiff and Class Members' purchase of the *Oblivion* video game.

81.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered and will continue to suffer actual damages in the form of monies paid to purchase the *Oblivion* video game and the difference in value between the *Oblivion* video game with and without the Animation Defect.

## FOURTH CLAIM FOR RELIEF
### Restitution/Unjust Enrichment

82.     Plaintiff hereby incorporates all previous allegations contained in this Complaint as though fully set forth herein.

83.     Plaintiff and the Class have conferred a benefit upon Defendants.  Defendants have received and retained money belonging to Plaintiff and the Class as a result of their unlawful and deceptive practices.

84.     Defendants appreciate or have knowledge of said benefit.

85.     Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and the Class that they unjustly received as a result of their actions.

86.     Plaintiff and the Class have suffered financial loss as a direct result of Defendants' conduct.

87.     Plaintiff, on his own behalf and on behalf of the Class, seeks the imposition of a constructive trust on and restitution of the proceeds Defendants received as a result of their conduct described herein, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Landis Edwards, individually and on behalf of the Class, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Class defined above, appointing Landis Edwards as the representative of the Class, and appointing his counsel and class counsel;

2.     Declare that Defendants' actions, as set out above, violate C.R.S. § 6-1-101 *et seq.*, and constitute breach of implied warranty of merchantability, fraud by omission, and unjust enrichment entitling Plaintiff and the Class to restitution.

3.     Entry of judgment against Defendants ZeniMax and Bethesda for all monetary, actual, consequential, and compensatory damages caused by their unlawful conduct;

4.     An injunction requiring Defendant to cease all fraudulent and misleading advertising regarding the *Oblivion* video game, and otherwise protecting the interests of Plaintiff and the Class;

5.     Award Plaintiff and the Class restitution in the form of complete disgorgement of all revenue derived from sales of the *Oblivion* video game and each of its editions;

6.     An award of reasonable attorneys' fees and costs; and

7.     Such further and other relief the Court deems reasonable and just.

Dated this 5th day of January, 2012

Respectfully submitted,

*/s/ Steven L. Woodrow*
Steven L. Woodrow #43140
EDELSON MCGUIRE LLC

ATTORNEY FOR PLAINTIFF