## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

LANDIS EDWARDS, individually and on behalf
of all others similarly situated,

               *Plaintiff,*                              Case No. 1:12-cv-00411-WYD-KLM

v.

ZENIMAX MEDIA, INC., a Delaware Corporation,
and BETHESDA SOFTWORKS, LLC, a Delaware
Limited Liability Company,

               *Defendants,*
_____/

---

### PLAINTIFF'S OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

### TABLE OF CONTENTS

INTRODUCTION...............................................................................................……1

FACTUAL BACKGROUND.....................................................................................2

ARGUMENT.............................................................................................................2

I.      DEFENDANTS' ARGUMENTS IN SUPPORT OF DISMISSAL HAVE BEEN SQUARELY REJECTED BY THE DISTRICT COURT IN THE RELATED *WALEWSKI* LITIGATION...........................................................................2

II.     BECAUSE PLAINTIFF PURCHASED *OBLIVION* IN COLORADO AND BECAUSE DEFENDANTS DO BUSINESS THROUGHOUT THE STATE, THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS...........................................3

III.   PLAINTIFF'S FRAUD-BASED CLAIMS SURIVIVE DISMISSAL...........................................5

       A.      Plaintiff Meets the Requirements of Rule 9(b) Because He Alleges the "Who, What, Where, When, and How" of Defendants' Fraudulent Conduct...........................5

       B.      Defendants' Discounting of Their Misrepresentations as Being Mere "Puffery" Fails—Defendants Misrepresented Objective Statements of Fact.............................7

       C.      Plaintiff States a Claim for Fraud by Omission Because Defendants Never Publicly Disclosed the Existence of the Animation Defect...........................................9

       D.      Defendants' Conduct Significantly Impacts the Public as Actual or Potential Consumers of Defendants' Goods...........................................11

IV.   PLAINTIFF STATES A CLAIM FOR THE IMPLIED WARRANTY OF MERCHANTABILITY BECAUSE HE ALLEGES THAT *OBLIVION* WAS NOT FIT FOR ITS ORDINARY PURPOSE...........................................12

V.     BECAUSE PLAINTIFF SEEKS SEPARATE DAMAGES UNDER EACH COUNT, PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS NOT DUPLICATIVE.................15

CONCLUSION...........................................................................................15

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). .................................................................. 3

**United States Circuit Court of Appeals Cases:**

*Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009)........................................8, 9

*EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865 (3d Cir. 2000) ..........................7

*Hill v. Morehouse Med. Assoc. Inc.*, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ..................................7

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998)........................................5

*Robins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)..................................................3

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997) ......................6

*U.S. ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325 (5th Cir. 2003) ..........................7

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010) .......................6

*Wood v. Eli Lilly & Co.*, 38 F.3d 510 (10th Cir. 1994)..............................................4-5

**United States District Court Cases:**

*Colorado Foundation, Inc. v. American Cyanamid Co.*, 216 F. Supp. 2d 1188 (D. Colo. 2002) .................15

*Elvig v. Nintendo of Am., Inc.*, No. 08 Civ. 2616, 2010 WL 3803814 (D. Colo. Sept. 23, 2010)...................14

*Giles v. Inflatable Store, Inc.*, 2009 WL 961469 (D. Colo. Apr. 6, 2009) ..............................8, 10

*Hughes v. Panasonic Consumer Elec. Co.*, 2011 WL 2976839 (D.N.J. Jul. 21, 2011).........................14, 15

*Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co.*, 641 F. Supp. 2d 1167 (D. Colo. 2009)........................................................13

*Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D. Colo. 2002). ..........................12, 13

*Price v. Wilson Sporting Goods*, No. 03-cv-02639, 2005 WL 2811775 (D. Colo. Oct. 27, 2005)................14

*Warner v. Ford Motor Co.*, 2008 WL 4452338 (D. Colo. Sept. 30, 2008). ................................. 9

**State Supreme Court Cases:**

*Crowe v. Tull*, 126 P.3d 196 (Colo. 2006).............................................................................. 12

*Foundation for Knowledge In Development v. Interactive Design Consultants, LLC*,
    234 P.3d 673 (Colo. 2010)................................................................................................ 5

*Goettman v. N. Fork Valley Rest.*, 176 P.3d 60 (Colo. 2007) ................................................. 5

*Rhino Listings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003)....................... 13

**State Appellate Court Cases**

*Bedard v. Martin,* 100 P.3d 584 (Colo. App. 2004). ...................................................... 11, 12

*Coors v. Security Life of Denver Ins. Co.*, 91 P.3d 393 (Colo. App. 2003)................................. 10

*Harris Group v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) ....................................... 15

*Park Rise Homeowners Ass'n v. Resource Construction Co.*, 155 P.3d 427 (Colo. App. 2006) ................. 8, 9

**Statutory Provisions:**

C.R.S. § 4-2-314. .................................................................................................... 13

C.R.S. § 6-1-101, *et seq.*.......................................................................................... 6

Fed. R. Civ. P. 8 ...................................................................................................... 3

Fed. R. Civ. P. 9 ............................................................................................ 1, 4, 6, 7

**Miscellaneous Authorities:**

*The Elder Scrolls*, Bethesda Softworks Forum, http://forums.bethsoft.com/forum/13-the-elder-scrolls/
    (last visited Feb. 29, 2012). ........................................................................................ 11

## <u>INTRODUCTION</u>

Defendants' strategy in this case is simple: make the dispute all about the Plaintiff's lawyers so as to deflect attention from their unlawful conduct. The Court should not be distracted by such tactics.  The focus of this case is that *The Elder Scrolls IV: Oblivion* video game suffers from a glitch that renders it functionally useless past a certain point of play. Despite knowing full well that this problem exists, Defendants continue to sell the game anyway without disclosing the issue to customers or offering to fix it. Instead, Defendants accuse Plaintiff's counsel of trying to exploit the game's success while seeking refuge behind various (and meritless) legal defenses. But Defendants fail to mention that all of their challenges to Plaintiff's complaint were previously rejected in a related federal proceeding, in which the court found that factual allegations nearly identical to those asserted by Plaintiff Edwards were sufficient to state a claim under federal law.[1] Because Defendants merely rehash the same attacks here, this Court should similarly deny their Motion to Dismiss.

Defendants first assert, incorrectly, that this court lacks personal jurisdiction. The Complaint establishes that Defendants advertise and conduct business on a nationwide basis and that Edwards's claims arise from his purchase of Defendants' product in Colorado. Second, Plaintiff's allegations satisfy the particularity requirements of Rule 9(b), as they set forth (in detail) Defendants' misrepresentations and the critical omissions at the heart of this case. Third, the misrepresentations identified go well beyond non-actionable "puffery." Plaintiff alleges that Defendants' misstatements attributed specific qualities to *Oblivion* that had distinct and tangible meanings to consumers. Fourth, and although Defendants admitted to critical defects affecting the performance of *Oblivion* to a small number of *Oblivion* players, Defendants never

---

[1]      *See Walewski v. ZeniMax Media Inc., et al.*, Case No. 6:11-cv-1178-Orl-28DAB (Dkt. No. 43, Order Denying Defendants' Motion to Dismiss) (finding that Defendants' Motion to Dismiss is "DENIED insofar as it challenges the sufficiency of the substance of the Complaint's allegations") ("*Walewski*").

publicly disclosed the existence of those defects to Plaintiff or other potential purchasers of the game.

Finally, Defendants' challenges to Plaintiff's implied warranty and unjust enrichment claims simply disregard or contradict well-pleaded allegations in the Complaint. Plaintiff alleges that *Oblivion* was unfit for its ordinary use and has thus stated a claim for breach of the implied warranty of merchantability. Finally, because Plaintiff seeks damages in connection with his claim for unjust enrichment that are not available under Plaintiff's other claims, the unjust enrichment claim is not "duplicative."

## FACTUAL BACKGROUND

Defendant Bethesda is the developer and publisher of the *Elder Scrolls*, a series of single-player, role-playing video games. (Compl. ¶ 6.) Originally released on March 20, 2006, *The Elder Scrolls IV: Oblivion* is the fourth full installment of the series. (*Id.* ¶ 8.)

*Oblivion* purports to offer open-ended or "sandbox' gameplay, allowing players to freely roam the gaming world and perform various tasks, develop individual characters, or simply explore. (*Id.* ¶ 10.) While the game features a main quest and storyline, players are encouraged to postpone the main quest to explore the gaming world at length and perform "side quests" outside of the primary storyline. (*Id.*) The open-world nature of *Oblivion*, the size of the virtual gaming world, and the longevity of the game are key features emphasized by Defendants in their online and print advertising and the primary reasons that consumers purchased the game. (*Id.* ¶¶ 11-13.) Defendants encouraged consumers to spend substantial amounts of time playing *Oblivion* and developing individual characters, and even sponsored an "*Oblivion* Iron Man" contest challenging players to spend in excess of 1000 hours playing with a single character and save file. (*Id.* ¶ 18.)

Unbeknownst to Plaintiff and other consumers, each copy of *Oblivion* is hampered by a severe design defect that suddenly and unexpectedly occurs during gameplay (the "Animation Defect"). (*Id.* ¶ 20.) Once manifested, the Animation Defect causes all "secondary" animations to freeze, prohibiting advancement into

2

new areas of the gaming world and preventing basic character animations that are essential to progressing in the game. (*Id.* ¶¶ 23-24.) The result of the Animation Defect is crippling to general gameplay and the player's use of the game, and players are unable to fix the technical issues following the onset of the defect. (*Id.*).

Defendants have long been aware of the Animation Defect and its impact on *Oblivion*. (*Id.* ¶¶ 31-34.) Despite their knowledge of the defect, however, Defendants have refused to provide a patch, replacement product, or any other remedy to consumers who experience the Animation Defect. (*Id.* ¶¶ 33, 35.) Nor have Defendants taken any action to notify past or future purchasers of the inherent defects in the game. (*Id.* ¶ 35.) Instead, Defendants continue to advertise and sell *Oblivion* to consumers, all of whom are led to believe that they will experience gameplay that *Oblivion* simply cannot offer. (*Id.* ¶ 37.)

## ARGUMENT

In reviewing a motion to dismiss, all well-pleaded facts must be accepted as true and the reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff. *Robins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Rule 8(a)(2) does not require detailed factual allegations, and a motion to dismiss must be denied if the complaint contains a claim that is "plausible on its face," which occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**I.      Defendants' Arguments in Support of Dismissal Have Been Squarely Rejected by the District Court in the Related *Walewski* Litigation.**

Defendants' Motion to Dismiss advances many of the same meritless arguments that were considered, and rejected, by the district court in the "related" *Walewski* case currently pending before Judge John Antoon, II in the Middle District of Florida. In that matter, involving the same underlying allegations regarding *Oblivion* and the Animation Defect at issue here, Defendants sought dismissal on the grounds that:

3

(a) the plaintiff's fraud-based allegations did not meet Rule 9(b)'s heightened pleading requirements, (b) Defendants' misrepresentations amounted to non-actionable puffery, and (c) the complaint "contradicted itself" by alleging that "Defendants admitted their knowledge of the Animation Defect in Bethesda's forums." In an Order dated November 28, 2011, the district court denied Defendants' motion to dismiss, with prejudice and in its entirety, "insofar as it challenge[d] the sufficiency of the substance of the Complaint's allegations."[2] (*See* Order Denying Motion to Dismiss, attached hereto as Exh. A.)

The same result is warranted here. Plaintiff's claims are based on the same conduct at issue in *Walewski*, and Plaintiff seeks relief pursuant to substantially identical statutory and common law causes of action. Because Defendants do little more than reassert each of the arguments advanced in *Walewski*, they are similarly insufficient to challenge the "substance of the Complaint's allegations" here and should be rejected.

## II.   Because Plaintiff Purchased *Oblivion* in Colorado and Because Defendants Do Business Throughout State, the Court Has Personal Jurisdiction Over Defendants.

Defendants first assert that this Court lacks personal jurisdiction because Defendants do not maintain sufficient minimum contacts with Colorado. Defendants are mistaken, as Plaintiff, a Colorado resident, expressly alleges that Defendants advertise and sell *Oblivion* throughout the United States, that Plaintiff himself purchased the game at a retail store in Colorado, and that he experienced the injuries alleged in the complaint within the State.

In assessing whether a defendant is subject to personal jurisdiction, a federal court sitting in diversity applies the laws of the forum state. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). Colorado's

---

[2]     In their Motion to Dismiss, Defendants assert that Magistrate Judge Baker recently issued a non-binding recommendation that the district court in *Walewski* "dismiss plaintiff's complaint for failure to state a claim." (MTD at 1, fn 1.) But Defendants fail to disclose that Magistrate Judge Baker's recommended disposition is premised solely on choice of law grounds and does not call into question the sufficiency of Plaintiff's substantive allegations. Indeed, the only result of the recommended "dismissal" (if adopted by the district court) would be to require Plaintiff to replead his claims—currently pled under Maryland law—under Florida statutory and common law.

long-arm statute "extends jurisdiction to the maximum extent allowed by the due process requirements of the

Constitution." *Foundation for Knowledge In Development v. Interactive Design Consultants, LLC*, 234 P.3d

673, 677 (Colo. 2010). A plaintiff may satisfy the requirements of due process by demonstrating either general

or specific jurisdiction over a defendant. *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 66 (Colo. 2007). In

particular, a court has general jurisdiction over a defendant who conducts "continuous and systematic

activities" in the forum state, while specific jurisdiction is appropriate if "the injuries triggering the litigation

arise out of and are related to" the defendant's minimum contacts with Colorado. *Foundation*, 234 P.3d at 678.

This Court may exercise specific jurisdiction over Defendants. They purposefully directed their

activities at Colorado residents by widely advertising *Oblivion* and intentionally making the product readily

available within the state at both physical retail locations and through online retailers accessible by Colorado

residents. (Compl. ¶¶ 5, 12-14.) Moreover, Plaintiff's injuries "arise out of" Defendants' activities within the

forum because Plaintiff viewed Defendants' advertisements in Colorado, purchased his copy of *Oblivion* from

a retail store in Colorado, and experienced the Animation Defect at his home in Colorado. (Compl. ¶¶ 42-50.)

These well-pleaded facts are more than sufficient to demonstrate specific jurisdiction over Defendants.[3]

In effect, Defendants argue that they should be allowed to freely market and sell *Oblivion* and other

video games to thousands of consumers throughout Colorado, but that they should not be hailed into a

Colorado court when their products cause injury to residents within the State. The law prohibits Defendants

from having it both ways. Defendants are accordingly subject to personal jurisdiction in Colorado.

---

[3]     To be sure, Plaintiff further pleads that Defendants maintained "continuous and systematic" contacts with Colorado. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998) (general jurisdiction requires "continuous and systematic general business contacts" with the forum state). The Complaint alleges that Defendants have continuously and systematically advertised and made *Oblivion* available to consumers throughout the United States, including Colorado, leading to substantial sales of *Oblivion* and continuous business contacts with this forum. Defendants themselves admit the scope of *Oblivion's* reach, claiming that the game has achieved "worldwide critical acclaim" (MTD at 1). Thus, this Court may also exercise general jurisdiction over Defendants.

III.    **Plaintiff's Fraud-Based Claims Survive Dismissal.**

Plaintiff's detailed, particularized allegations are sufficient to state claims for relief under the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.* ("CCPA") and for fraud by omission. Each of Defendants' challenges to Plaintiff's fraud-based claims distorts well-pleaded facts and misapplies the law.

A.    **Plaintiff Meets the Requirements of Rule 9(b) Because He Alleges the "Who, What, Where, When, and How" of Defendants' Fraudulent Conduct.**

Plaintiff's fraud-based claims meet the particularity requirements of Rule 9(b). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule does not require, however, "that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997). Rather, the purpose of Rule 9(b) is "to afford [a] defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).

Plaintiff's allegations are more than sufficient to provide Defendants with "notice of what they are charged with" and thus satisfy Rule 9(b). Critically, Defendants fail to address the alleged material omission at the heart of this case—that Defendants were aware of, but intentionally failed to disclose the existence of, the Animation Defect and its effect on *Oblivion's* gameplay. Indeed, Plaintiff alleges that Defendants knowingly failed to disclose the existence of the Animation Defect and its crippling effect on gameplay. (Compl. ¶¶ 23-32.) While Defendants may have subsequently admitted their knowledge of the Animation Defect to individual consumers, they failed to address the defect or provide notice to the broader consumer base of the issue. (*Id.* ¶¶ 33-35.) Plaintiff also alleges precisely what facts Defendants failed to disclose (the Animation

Defect and its effect on gameplay) to whom (the Plaintiff and the other class members) when (at the time

Plaintiff purchased the product nor when Defendants became aware of these facts (undeniably at least as early

as March, 2007)), and precisely what action Plaintiff would have taken had he been made aware of the facts

(he would not have purchased *Oblivion*). Edwards provides a level of detail that more than satisfies Rule 9(b).[4]

Additionally Plaintiff identifies specific misrepresentations made by Defendants relating to *Oblivion*.

Plaintiff alleges that Defendants: (1) published a widely-distributed online description of *Oblivion*, which

appeared on numerous websites including Amazon.com and video game retailer Gamestop.com, claiming that

*Oblivion* offered "open-ended gameplay" in an "enormous world" that "allow[ed] players to explore at their

own pace[,]" (Compl. ¶ 12); (2) represented in the instruction manual of *Oblivion* that the game "offers

unlimited possibilities[,]" (Compl. ¶ 13); and (3) published, on Bethesda's official blog, that a player could

play over "1000 hours" with a single *Oblivion* character and save file. (Compl. ¶ 18.) Accordingly, Plaintiff

alleges precisely what misrepresentations were made, the content of each misrepresentation, the location of

each statement, and when the statements were made. Rule 9(b) does not require more.

Defendants assert that Plaintiff has yet to show "a specific misrepresentation or omission that misled

him." (Def. Mot. 8.) This ignores the complaint. Plaintiff specifically alleges that, prior to purchasing *Oblivion*,

he viewed Defendants' advertisements about the scope and longevity of the gameplay purportedly featured in

*Oblivion* and that the gameplay was the primary reason that Plaintiff purchased the game. (Compl. ¶ 43.)

Moreover, Plaintiff alleges that he was not aware of the existence of the Animation Defect or its effect on

---

4      Further, the existence of the Animation Defect was a fact uniquely within Defendants' knowledge. Numerous courts have held that Rule 9(b)'s heightened pleading standard is "relaxed" when, as here, "facts relating to the fraud are peculiarly within the perpetrator's knowledge." *U.S. ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003); *Hill v. Morehouse Med. Assoc. Inc.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (same) *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000) (same). While Plaintiff need not rely on a "relaxed" standard to meet the Rule 9(b) pleading requirements, it is nonetheless applicable and readily met by Plaintiff's detailed allegations.

gameplay prior to purchasing *Oblivion*. (*Id.* ¶ 43.) As a result, the Complaint is sufficiently specific.

**B.      Defendants' Discounting of Their Misrepresentations as Being Mere "Puffery" Fails—Defendants Misrepresented Objective Statements of Fact.**

Defendants' argument that their misrepresentations amounted to nothing more than "non-actionable puffery" overlooks the objective nature of the statements and entirely ignores their context. Puffery is defined as the "expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service." *Park Rise Homeowners Ass'n v. Resource Construction Co.*, 155 P.3d 427, 435 (Colo. App. 2006). While "general statements of opinion" may constitute puffery, specific representations of fact are not protected and can form the basis of a deceptive trade practice claim. *Id.* Moreover, the "context in which a statement is made is important to the inquiry." *Giles v. Inflatable Store, Inc.*, 2009 WL 961469, at *3 (D. Colo. Apr. 6, 2009). Only "vague generalities that no reasonable person would rely on as assertions of particular facts" may constitute non-actionable puffery. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).

Here, Defendants attributed specific characteristics to *Oblivion* that had actual and tangible meanings to a targeted class of consumers. Defendants repeatedly described the gameplay of *Oblivion* as "open-ended," the gaming world as offering "unlimited possibilities" for "wandering and exploring," promised that gamers could enjoy the game "at their own pace," and claimed that an individual could play *Oblivion* in excess of "1000 hours" on a single save file. (Compl. ¶¶ 12-13, 19). These statements are capable of objective verification and, ultimately, are untrue—the gameplay loses its "open-ended" nature once the Animation Defect occurs, players cannot play the game for anywhere near 1000 hours, and the gaming world is manifestly limited by the game's inability to process animations. (Compl. ¶¶ 21-26.) While Defendants provide their own definition for the terms "open-ended" and "open-world" gameplay (MTD at 10, fn 4), accepting Plaintiff's allegations as true, the Animation Defect renders *Oblivion* incapable of providing the

gameplay that Defendants themselves describe.

Defendants' "puffery" defense further fails in light of the context in which the statements appeared. *Alpine Bank*, 555 F.3d at 1106 ("In determining whether a statement is puffery, the context matters"). The qualities that Defendants attributed to *Oblivion* have distinct meanings within the video gaming community, and consumers are particularly attracted to games that provide true "open-world gameplay opportunities without restriction. (Compl. ¶ 15.) Accordingly, in the context of video game advertisements, Defendants' use of these descriptors was material and designed to induce gamers to purchase *Oblivion* based on such consumers' knowledge and expectations of the gameplay *Oblivion* purportedly offered.

The cases relied upon by Defendants do little more than illustrate the difference between non-actionable puffery and objective, factual misstatements. *See Alpine Bank*, 555 F.3d at 1097 (statement that bank would "take care of everything else" did not represent that the bank would "perform in a particular way"); *Warner v. Ford Motor Co.*, 2008 WL 4452338, at *9 (D. Colo. Sept. 30, 2008) (slogans that "Quality is Job 1" and "Built Ford Tough" are non-actionable puffery); *Park Rise*, 155 P.3d at 435 (builder's statement that it offered "quality construction" was non-actionable). Each of the statements at issue in those cases was incapable of objective measure. In contrast, Defendants' misrepresentations attributed specific characteristics to *Oblivion* that Plaintiff alleges were rendered untrue by the Animation Defect and other technical issues. In particular, the gameplay is not "open-ended," because, if a player chooses to postpone *Oblivion's* main quest, the Animation Defect will occur and prevent further progress. (Compl. ¶¶ 23-25.) The game does not feature "unlimited [gameplay] opportunities" because the Animation Defect forces players to play *Oblivion* linearly and attempt to finish the game before the defect occurs. (Compl. ¶ 30.) And players cannot play anywhere near 1000 hours because the Animation Defect will occur long before a player can reach that point. (Compl. ¶ 19.)

At most, any determination of whether Defendants' misrepresentations should be classified as

"puffing" rather than actionable misstatements presents a factual issue that is properly left to the trier of fact. *See Giles*, 2009 WL 961469, at *3, fn 4 ("if a statement allegedly constituting a deceptive trade practice can reasonably be construed as both fact and opinion, whether it is non-actionable puffery is properly a question of fact for the jury"). Accordingly, this Court should refuse to dismiss Edwards's claims on these grounds.

> **C.      Plaintiff States a Claim for Fraud by Omission Because Defendants Never Publicly Disclosed the Existence of the Animation Defect.**

Defendants' additional challenge to Plaintiff's fraud by omission claim—that Defendants publicly "notified their customers of the Animation Defect"—is not based in reality. Rather, the Complaint makes clear that Defendants admitted to the existence of the Animation Defect to individual consumers, but intentionally withheld the information from the general public, including Plaintiff.

Under Colorado law, one may "commit fraud by concealing material existing facts that in equity and good conscience ought to be revealed." *Coors v. Security Life of Denver Ins. Co.*, 91 P.3d 393 404 (Colo. App. 2003). Edwards alleges that Defendants concealed a material fact—the existence of the Animation Defect— that should have been revealed, given Defendants' knowledge of its impact on *Oblivion's* gameplay and their inability to patch or otherwise remedy the problem. (Compl. ¶¶ 32, 75-81.) Defendants argue that these allegations are "contradicted" by Plaintiff's assertion that Defendants "admitted their knowledge of the Animation Defect on Bethesda's online forums," claiming that Plaintiff should have discovered Defendants' "public" recognition of the Animation Defect prior to purchasing *Oblivion*.

Defendants' argument simply ignores the basic facts surrounding their admission of the Animation Defect. Plaintiff alleges that a Bethesda employee admitted, in response to an individual consumer inquiry, that Defendants were aware of the Animation Defect and did not intend to provide an "official patch or fix to correct the issue." (Compl. ¶ 33-34.) The response was subsequently posted by a consumer—not

Defendants—on Bethesda's online forums, but Defendants did nothing to further disseminate the message or to inform potential purchasers of the defect. (Compl. ¶ 35.) The "disclosure" was thus available exclusively on Bethesda's forums, was not posted by or "officially" verified by Defendants on the forums, and could be viewed only be those consumers who were able to navigate to the single forum "thread" on the issue.

Defendants essentially argue that Plaintiff and other potential purchasers of *Oblivion*—who do not yet own the game and have no reason to know that it is defective—should be required to conduct an exhaustive investigation that will lead them to the single forum thread that reveals Defendants' investigation into the Animation Defect (or perhaps hire an attorney and learn of these lawsuits.) It is unclear how Plaintiff would know to check these forums, as Defendants did not reference the Animation Defect in any other location that would direct Plaintiff to Bethesda's website. And once within the forums, Plaintiff would have to navigate through thousands of messages—the *Oblivion* forum alone currently features 21,567 unique discussion topics and 368,818 message replies[5]—to locate the single thread containing Defendants' "disclosures."

Unsurprisingly, Defendants cannot point to a single case that places such a burden on consumers. Instead, Defendants rely exclusively on *Bedard v. Martin* for the proposition that Plaintiff cannot state a claim for fraud where he had "equal access" to information that "would have led to the discovery of the true facts" underlying his fraud claim. 100 P.3d 584 (Colo. App. 2004). In *Bedard*, the plaintiff purchased a large parcel of land and made substantial improvements, only to later discover that the seller had never actually held title in the first place. *Id.* In rejecting the plaintiff's negligent misrepresentation claim, the court determined that "[plaintiff] could have discovered on his own whether [the seller] actually held title, *which was a matter of public record.*" *Id.* at 592 (emphasis added). *Bedard* thus stands in stark contrast to the instant case, where

---

[5] Available at: http://forums.bethsoft.com/forum/13-the-elder-scrolls/ (last visited February 29, 2012).

Plaintiff had no reason to suspect that the Animation Defect existed and the information was not in the "public

record" under any reasonable interpretation of that term.

Accordingly, Defendants' challenge to Plaintiff's fraud by omission claim is without merit.

> **D.      Defendants' Conduct Significantly Impacts the Public as Actual or Potential
> Consumers of Defendants' Goods.**

Defendants next argue that their deceptive practices did not "significantly impact the public" as

required to maintain a claim under the CCPA. (Def. Mot. 10.) Defendants' claim is without merit, as the

Complaint demonstrates that millions of consumers have suffered or may potentially suffer the precise injury

alleged by Plaintiff in connection with their purchase of *Oblivion* or other video games.

The CCPA's "public injury" requirement serves only to prevent consumers from using the CCPA to

remedy a "purely private wrong." *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006). Courts consider three factors

(which Defendants altogether ignore) in assessing the public impact of an allegedly deceptive trade practice: (i)

the "number of consumers directly affected by the challenged practice," (ii) the "relative sophistication and

bargaining power of the consumers affected by the challenged practice," and (iii) whether the deceptive

practice "previously impacted other consumers or has significant potential to do so in the future." *Loughridge*

*v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002).

Here, Plaintiff alleges that Defendants advertised *Oblivion* in a uniform, misleading manner and

ultimately sold the defective game to millions of consumers despite knowing about the Animation Defect and

other technical issues. (Compl. ¶¶ 12-14, 36-37.) The putative class of consumers had no effective bargaining

power when purchasing *Oblivion* and lacked the technical sophistication of Defendants to identify and remedy

the defects in Defendants' product. (Compl. ¶ 35.) Finally, the glitch has already impacted actual purchasers of

*Oblivion* and will continue to affect future purchasers of the game. (Compl. ¶¶ 39-41.) Accordingly, the

Complaint readily establishes that this action involves misrepresentations and a uniformly defective product that has "significantly impacted the public" as actual or potential purchasers of *Oblivion*.

Defendants rely solely on cases involving private, contractual suits that are readily distinguishable. *See Rhino Listings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) (finding no public impact in suit against manufacturer regarding the rights of two competing dealers to sell manufacturer's products exclusively in assigned territory); *Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co.*, 641 F. Supp. 2d 1167 (D. Colo. 2009) (no public impact where plaintiff sued for breaches of an insurance agreement after its insurer denied coverage for damages caused by a fire on plaintiff's property). This case is much more akin to *Loughridge*, where several plaintiffs filed suit after a heating hose manufactured by Goodyear began leaking fluid and caused heating systems to malfunction. 192 F. Supp. 2d at 1180. While the Court could not determine exactly how many consumers actually experienced the product defect, the Court found public impact because "Goodyear's marketing efforts . . . were targeted to the ultimate consumer" and Colorado was a primary market for the hose. *Id.* at 1185. Thus, the alleged fraud "impacted a large number of Colorado consumers and has the significant potential to do so in the future." *Id.* at 1186.

Edwards similarly alleges misconduct that has had a significant public impact within the meaning of the CCPA and is likely to impact additional consumers in the future. The public impact is clear.

**IV.    Plaintiff States a Claim for the Implied Warranty of Merchantability Because He Alleges that *Oblivion* Was Not Fit for Its Ordinary Purpose.**

Defendants' claim that *Oblivion* "remains functional" after the onset of the Animation Defect contradicts the express allegations of the Complaint and cannot defeat Plaintiff's implied warranty claim. C.R.S. § 4-2-314 provides that a warranty "that goods shall be merchantable is implied in a contract for their sale." In this context, "merchantability means that the goods are fit for the ordinary purposes for which such

goods are used." *Elvig v. Nintendo of Am., Inc.*, 2010 WL 3803814, at *5 (D. Colo. Sept. 23, 2010). Implied

warranty liability extends to manufacturers of products as well as the ultimate seller of the goods at issue. *Price*

*v. Wilson Sporting Goods*, 2005 WL 2811775, at *4 (D. Colo. Oct. 27, 2005).

Here, Plaintiff alleges that "[a]t the time Defendants designed, manufactured, and sold" the *Oblivion*

video game, they knew of the uses for which it was intended—namely, uninterrupted gameplay by Plaintiff

and the Class—and impliedly warranted that "it would be of merchantable quality and fit for [that] intended

use." (Compl. ¶ 71.) Specifically, Defendants warranted that the game "would offer free-form, open-ended,

expansive gameplay, and be free of inherent defects that prevented such gameplay." (Compl. ¶ 72.)

Defendants breached that warranty by developing and distributing *Oblivion*, which they knew "suffered from

the Animation Defect," causing Plaintiff and the Class to suffer damages. (Compl. ¶ 73.)

Defendants assert that Plaintiff's implied warranty claim should be dismissed because "*Oblivion*

remains functional" after the onset of the Animation Defect. But Plaintiff alleges precisely the opposite—once

the Animation Defect inevitably occurs, *Oblivion* becomes completely inoperable and the player cannot

continue with the game. (Compl. ¶¶ 24-25.) Simply restarting the game, as Defendants suggest, does not

rectify the problem. The Animation Defect will promptly reoccur in subsequent games, rendering the game

unfit for its intended use—open-ended, continuous gameplay. (Compl. ¶ 31.) Defendants' argument, then, is

best described as a disagreement regarding the facts alleged by Plaintiff relating to the Animation Defect and

its effect on *Oblivion*'s gameplay, which cannot be resolved at the pleadings stage.

Defendants' reliance on *Hughes v. Panasonic Consumer Elec. Co.*, 2011 WL 2976839 (D.N.J. Jul.

21, 2011) is misplaced. In *Hughes*, the plaintiff argued that certain Panasonic televisions were defective

because their image quality had deteriorated since the time of sale. *Id.* at *23. The court dismissed the implied

warranty claim, finding that the complaint did not allege that the televisions "were inoperable or otherwise are

14

not in working condition." *Id.* Because the plaintiffs could still watch television, they could not demonstrate that the televisions were no longer fit for their ordinary purpose. *Id.* In contrast, Plaintiff here alleges that he is unable to use *Oblivion* in its intended manner—that is, after the Animation Defect occurs, Plaintiff cannot play *Oblivion* at all. (Compl. ¶¶ 25, 48-49.) Moreover, *Oblivion's* intended use is precisely what Defendants have represented: "open-ended," "free form" gameplay. Plaintiff's implied warranty claim thus survives dismissal.

**V.    Because Plaintiff Seeks Separate Damages Under Each Count, Plaintiff's Unjust Enrichment Claim is Not Duplicative.**

        Without citation to Plaintiff's Complaint, Defendants last argue that Plaintiff's claim for unjust enrichment should be dismissed because it seeks "identical damages… as those sought under the other three claims for relief." (MTD at 15.) Defendants are both factually and legally mistaken.

        In the context of his claim for unjust enrichment, Plaintiff "seeks the imposition of a constructive trust on and restitution of the proceeds Defendants received as a result of their [unlawful] conduct," a form of relief not allowed under the CCPA or any of Plaintiff's other claims. (Compl. ¶ 87.) Plaintiff seeks only actual damages on his other claims. In these situations, the "equitable remedy" sought by an unjust enrichment claim is separate from any available remedy at law. *Colorado Foundation, Inc. v. American Cyanamid Co.*, 216 F. Supp. 2d 1188, 1200 (D. Colo. 2002) (plaintiffs' unjust enrichment remedy "is separate and independent from Plaintiffs' remedy at law, in that it is premised on the benefits realized by [defendant] as a result of its misconduct, rather than [Plaintiffs'] demonstrated financial loss"); *Harris Group v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) (unjust enrichment claim is appropriate where the objective of available legal remedies is different). Accordingly, Plaintiff's claim for unjust enrichment should stand as well.

## CONCLUSION

        For the reasons detailed herein, Defendants' motion to dismiss should be denied in its entirety.

Alternatively, Plaintiff requests leave to file an amended complaint curing any deficiencies found by the Court.

Dated:   March 8, 2011                              Respectfully submitted,

                                                    LANDIS EDWARDS, individually, and on behalf
                                                    of all others similarly situated,


                                                    /s/ Steven Lezell Woodrow_____
                                                    One of Mr. Edwards' Attorneys


                                                    EDELSON MCGUIRE LLC
                                                    Steven Lezell Woodrow
                                                    999 18th Street, Suite 300
                                                    Denver, CO 80202
                                                    Phone: (303) 357-4878
                                                    Fax: (312) 589-6378
                                                    Email: swoodrow@edelson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 8, 2012, he caused the above and foregoing **Plaintiff's Opposition to Defendants' Motion to Dismiss and Incorporated Memorandum of Law** to be electronically filed using the Court's CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: March 8, 2012

/s/ Steven Lezell Woodrow_____
EDELSON MCGUIRE LLC
999 18th Street, Suite 300
Denver, CO 80202
Phone: (303) 357-4878
Fax: (312) 589-6378
Email: swoodrow@edelson.com

*Attorney for Plaintiff Landis Edwards*