UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00411-WYK-KLM

LANDIS EDWARDS, individually and on behalf of all others similarly situated

    Plaintiff,

v.

ZENIMAX MEDIA INC., a Delaware Corporation, and
BETHESDA SOFTWORKS LLC, a Delaware Limited Liability Company

    Defendants.
_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants ZeniMax Media Inc. ("ZeniMax") and Bethesda Softworks LLC ("Bethesda" and collectively, "Defendants") agree that this Court should follow the well-reasoned decisions of the United States District Court for the Middle District of Florida in the related case of *Walewski v. ZeniMax Media Inc., et al.* ("*Walewski*"), Case No. 6:11-cv-1178-Orl-28DAB. Plaintiff Landis Edwards' ("Plaintiff") characterization of Defendants' filings is incorrect[1] – but the *Walewski* Court's March 13, 2012, denial of plaintiff's motion for class certification without leave to amend and dismissal of plaintiff Walewski's complaint for failure to state a claim without leave to amend should guide this Court's rulings. As detailed, *infra*, Plaintiff's Complaint And Jury Demand ("Complaint") likewise fails to state a claim and should be dismissed. Furthermore, there can be no viable class in this case and Defendants separately will move to strike Plaintiff's class allegations pursuant to Fed.R.Civ.P. 23(d)(1)(D).

---

[1] Defendants' Motion to Dismiss presents new issues not addressed by the *Walewski* Court and does not merely "reassert … the arguments advanced in *Walewski*." [Dkt. #14 at 4.]

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition") concedes that Plaintiff's claims cannot be maintained on the allegations of the Complaint alone, and in a futile attempt to salvage each of Plaintiff's counts contorts the sparse facts actually alleged in the Complaint and raises new facts not set forth in the Complaint. But Plaintiff is held to the allegations of the Complaint – which fail to state a claim and should be dismissed under Rules 12(b)(2) and 12(b)(6) for at least the following reasons.

First, Plaintiff's Opposition exclusively relies on facts not alleged in the Complaint in an unfounded attempt to argue that this Court has personal jurisdiction over Defendants, but the Complaint as pleaded fails to allege any facts that establish that Defendants are subject to personal jurisdiction in Colorado and therefore the Complaint should be dismissed under Rule 12(b)(2). Second, the conclusory allegations of the Complaint fall far short of meeting the specificity requirement of Rule 9(b) and the Complaint should be dismissed pursuant to Rule 12(b)(6). Third, Plaintiff's claim under the Colorado Consumer Protection Act ("CCPA") further fails to state a claim and should be dismissed because the alleged misrepresentations are nothing more than puffery and are not capable of objective verification. Fourth, the manifestation of the alleged Animation Defect is a private harm that does not meet the CCPA's public injury requirement. Fifth, Plaintiff's fraudulent omission count fails because it is directly contradicted by the Complaint's allegation that Defendants "admitted their knowledge of the Animation Defect on Bethesda's [online] forums" when "a Bethesda employee posted [a] comment on Bethesda's official forums." Sixth, Plaintiff's breach of implied warranty of merchantability claim fails because the Complaint squarely alleges that the manifestation of the

alleged Animation Defect does not render *The Elder Scrolls IV: Oblivion*® ("*Oblivion*") "completely inoperable" – a player may simply restart the game with a new character.

Finally, Plaintiff's unjust enrichment count seeks the same monetary damages as Plaintiff's other counts and should be dismissed as duplicative. Plaintiff's attempt to distinguish the amounts at issue is a purely semantic distinction without a difference. Defendants accordingly respectfully request that this Court dismiss Plaintiff's Complaint in its entirety.

## ARGUMENT

### I. There Are No Facts Set Forth In The Complaint That Establish Personal Jurisdiction Over Defendants

Plaintiff's Complaint does not allege any facts that establish that this Court has personal jurisdiction over Defendants – and Plaintiff's attempt to argue in the Opposition that this Court may have personal jurisdiction over Defendants is manifestly outside of the allegations of the Complaint. The Opposition now claims that Defendants made "the product readily available within the state at both physical retail locations and through online retailers" and that Plaintiff's injuries arise from Defendants' activities in Colorado "because Plaintiff viewed Defendants' advertisements in Colorado" and "experienced the Animation Defect at his home in Colorado." [Dkt. #14 at 5.] None of these purported facts are alleged in the Complaint:

- Plaintiff's Complaint does not allege that Defendants made "the product readily available within the state at both physical retail locations and through online retailers." The Complaint alleges that "Defendant transacts business in Florida and throughout the country." (Compl. at ¶ 5.) There is no allegation that Defendants transact business in Colorado.

- Plaintiff's Complaint does not allege that he viewed Defendants' advertisements in Colorado. The Complaint alleges that Plaintiff "viewed Defendants' online and print advertisements and representations regarding the scope, longevity and nature of the gameplay purportedly featured in the *Oblivion* video game" and does not identify any specific location. (Compl. at ¶ 43.)

- Plaintiff's Complaint does not allege that Plaintiff "experienced the Animation Defect at his home in Colorado." The Complaint alleges that "[a]fter approximately 200 hours of gameplay, Plaintiff suddenly experienced the Animation Defect on his copy of the *Oblivion* video game" and does not identify where Plaintiff claims to have experienced the alleged Animation Defect. (Compl. at ¶48.)

The Opposition's futile attempt to augment the allegations of the Complaint cannot escape that Plaintiff's Complaint as pleaded fails to set forth any facts that establish that Defendants are subject to personal jurisdiction in Colorado. The Complaint should be dismissed under Fed.R.Civ.P. 12(b)(2) for this reason alone. *Rocky Mountain Chipseal LLC v. Sherman County, Kan.*, --- F. Supp. 2d ----, 2012 WL 161826, at *2-4 (D. Colo. 2012) (motion to dismiss granted under Rule 12(b)(2) where defendants lacked "both minimum contacts and continuous and systematic contacts with Colorado").

## II.     Plaintiff's CCPA And Fraudulent Omission Counts Fail To State A Claim

### A.     Plaintiff's Fraud Allegations Do Not Meet the Particularity Requirement of Rule 9(b).

The conclusory allegations of Plaintiff's Complaint do not satisfy the particularity requirement of Rule 9(b). The Complaint does not: (i) specifically allege which Defendant made any alleged misrepresentation; (ii) specifically allege which – if any – of these alleged misrepresentations were seen by and relied upon by Plaintiff; and (iii) specifically allege which misrepresentation – if any – actually misled Plaintiff. Instead the Complaint only vaguely alleges that Defendants described *Oblivion* as "open-ended" in two online advertisements and in the game's instruction manual (Compl. at ¶ 12-14) and that Plaintiff viewed unspecified "online and print advertisements" prior to purchasing *Oblivion*. (Compl. at ¶ 43.) These sparse allegations fall far short of Plaintiff's burden under Rule 9(b). *General Steel Domestic v. Chumley*, Case No. 10 Civ. 1398, 2011 WL 2415167, at *4 (D. Colo. June 10, 2011) (granting

motion to dismiss because the counter-plaintiff failed "to identify who made the [allegedly fraudulent] statements ... where they made them" or "the date" these statements were made); *Allen v. United Prop. And Constr., Inc.*, Case No. 07 Civ. 214, 2008 WL 4080035, at *13 (D. Colo. Sept. 3, 2008) (dismissing plaintiff's fraud claims which did "not allege how or when [defendant] made representations to [plaintiff] or describe the content of those representations").

Plaintiff's Opposition tellingly does not dispute that the Complaint fails to attribute any alleged misrepresentation to a specific Defendant – and the Complaint's failure to delineate the fraudulent conduct alleged against each Defendant further warrants dismissal of Plaintiff's fraud counts. *Mayhew v. Cherry Creek Mortgage Co., Inc.*, No. 09 Civ. 219, 2010 WL 935674, at *14 (D. Colo. March 10, 2010) (dismissing CCPA count where plaintiff failed to allege "what, if any, acts by any of the Defendants constituted a deceptive trade practice"); *Beckner v. The Consumers Trust*, No. 05 Civ. 1345, 2006 WL 618134, at *2 (D. Kan. March 9, 2006) ("[w]hen a complaint alleging fraudulent conduct contains multiple defendants, a plaintiff must specify, with particularity, which defendant is responsible for which fraudulent act"); *Jacobs v. Credit Suisse First Coston*, No. 11 Civ. 42, 2011 WL 4537007, at *2-4 (D. Colo. Sept 30, 2011) (dismissing plaintiff's fraud claims for failure to specifically delineate the misrepresentation made by each defendant).

### B.    The Alleged Misrepresentations Are Mere Puffery.

Defendants' alleged representations that *Oblivion* is an "open-ended" game that "offer[s] 'unlimited possibilities' for 'wandering and exploring' … that gamers could enjoy … 'at their own pace'" are mere puffery not "capable of objective verification." [Dkt. #14 at 8.] An advertisement stating that a video game offers "unlimited possibilities" simply cannot be

objectively or quantifiably verified – and the alleged misrepresentations accordingly are nothing more than vague advertising terms, not actionable statements of fact. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107, 1112-13 (10th Cir. 2009) (stating that the "term *puffery* is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts" and holding that an advertisement "that the customers need only dream and the bank will 'take care of everything else'" is mere puffery).

Plaintiff's Opposition attempts in vain to recast the allegations of the Complaint by arguing that the Complaint alleges that Defendants "claimed that an individual could play *Oblivion* in excess of '1000 hours' on a single save file." [Dkt. #14 at 8.] This allegation is not set forth in the Complaint. The Complaint actually alleges that "on its official blog, Bethesda sponsored an 'Oblivion Iron Man' contest that offered a prize to the player with the longest single-character gameplay time, **which Defendants presumed would exceed 1000 hours**." (Compl. at ¶ 19, emphasis added.) Notwithstanding the impropriety of Plaintiff's attempt to allege his supposition of Defendants' "presump[tion]" as a fact, the Complaint does not allege that Defendants ever represented that a player could play *Oblivion* in excess of 1000 hours.

### C. The Animation Defect Does Not Result In Any Significant Public Injury.

The manifestation of the alleged Animation Defect does not result in any actionable harm because the Complaint squarely alleges that *Oblivion* remains playable, as discussed, *infra* – but to the extent any harm is alleged, it is only a private harm and not a significant public injury required to maintain a claim under the CCPA. Plaintiff's futile attempt to link the alleged Animation Defect to statements on Amazon.com (Compl. at ¶¶ 12, 13) does not transform this case into one that involves a public harm because the number of alleged instances in which the

alleged Animation Defect harmed other consumers, if at all, is *de minimus* and does not affect the public.[2] *Rhino Listings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003) (allegedly deceptive act which effected "3 dealers out of 550 nationwide" did "not affect the public" and was "not actionable under the CCPA"); *Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co.*, 641 F. Supp. 2d 1167, 1180 (D. Colo. 2009) (plaintiff's CCPA claim fails because the alleged deceptive practice affected only 200 of an insurer's 20,000 policy holders and "was insufficient to show public impact").[3]

Plaintiff's Opposition's attempt to recast the allegations of the Complaint as alleging a public harm is unavailing. The Opposition claims that the Complaint alleges that Defendants' conduct significantly impacted the public because "[t]he putative class of consumers had no effective bargaining power when purchasing *Oblivion* and lacked the technical sophistication of Defendants to identify and remedy the defects in Defendants' product" (Paragraph 35) and "the glitch has already impacted actual purchasers of *Oblivion* and will continue to affect future purchasers of the game" (Paragraphs 39-41). [Dkt. #14 at 12.] These new claims in fact are not alleged in the Complaint. To the contrary, Paragraph 35 of the Complaint alleges:

> While Defendants admitted their knowledge of the Animation Defect on Bethesda's forums in response to customer complaints from current *Oblivion* players, Defendants intentionally did not further publicize or otherwise disclose the existence of the defect to a wider audience of potential purchasers. Accordingly, consumers were not made aware of the Animation Defect prior to purchasing the *Oblivion* video game.

---

[2] Plaintiff's Opposition tellingly does not dispute that the Complaint fails to allege that even one other consumer has experienced the alleged Animation Defect among the "millions" of *Oblivion* purchasers – instead only vaguely alleging that "the game suffers from a universal animation defect." (Compl. at ¶ 23.)

[3] Plaintiff's attempt to distinguish *Rhino Listings* and *Johnson Feed & Seed* is unavailing because Plaintiff fails to dispute that the *de minimus* impact of the alleged Animation Defect on the general public does not satisfy the CCPA's "significant impact" requirement.

(Compl. at ¶ 35.) Plaintiff cannot avoid that the Complaint does not set forth – in Paragraph 35 or anywhere else – a single allegation regarding the parties' relative bargaining power or consumers' technical sophistication. Moreover, Paragraphs 39-41 do not allege that the alleged Animation Defect has impacted and will impact other consumers in Colorado. Paragraphs 39-41 of the Complaint comprise a subsection of the Complaint entitled "Damages Suffered by Purchasers of the *Oblivion* game" and set forth the basis for Plaintiff's claim that the alleged Animation Defect "decreases the value of the *Oblivion* video game." (Compl. at ¶¶ 39-41.) The allegations of the Complaint as pleaded do not meet the public injury requirement of the CCPA.[4]

### D. Plaintiff's Fraud by Omission Count is Directly Contradicted By the Allegations of the Complaint.

Plaintiff cannot dispute the inherent incongruity between his claim that Defendants failed to disclose the alleged Animation Defect and the Complaint's allegation that Defendants "admitted their knowledge of the Animation Defect on Bethesda's [online] forums." (Compl. at ¶ 35). Instead the Opposition disingenuously argues that Defendants "never publically disclosed the Animation Defect" because "[t]he response was subsequently posted by a consumer – not Defendants – on Bethesda's online forums[.]" [Dkt. #14 at 10-11.] Plaintiff's argument again is shown to be spurious by the allegations of the Complaint. Plaintiff's Complaint alleges that "a ***Bethesda employee posted*** the following comment on Bethesda's official forums" regarding the alleged Animation Defect. (Compl. at ¶ 33, emphasis added.) Plaintiff's new claim that Defendants never "publically disclosed" the alleged Animation Defect is frivolous.

---

[4] Plaintiff's reliance on *Loughridge v. Goodyear Tire & Rubber Co.* is misplaced. 192 F. Supp. 2d 1175 (D. Colo. 2002). In *Loughridge*, "a large number of consumers in Colorado were directly affected by the challenged practice." *Id.* at 1186. As detailed, *supra*, the number of other consumers that have experienced the alleged Animation Defect, if any, is *de minimus*.

### III. The Complaint Fails To Set Forth A Claim For Breach Of The Implied Warranty Of Merchantability

Plaintiff's Opposition argues that "after the Animation Defect occurs, Plaintiff cannot play *Oblivion* at all" and that it is "completely inoperable." [Dkt. #14 at 14-15.] These new arguments are directly contradicted by the allegations of the Complaint, which alleges that once the alleged Animation Defect occurs "the player's only option is to restart the game with an entirely new character" and that after Plaintiff himself experienced the alleged Animation Defect, "Plaintiff was forced to abandon his saved game and forfeit his *original* character and progress in the game." (Compl. ¶¶ 25, 50 (emphasis added).) The game is not "completely inoperable." A player may – and Plaintiff apparently did – "restart the game with an entirely new character." (Compl. ¶ 25.) Plaintiff's breach of the implied warranty of merchantability count (Count II) accordingly fails. *Hughes v. Panasonic Consumer Elec. Co.*, No. 10 Civ. 846, 2011 WL 2976839, at *22-23 (D. N.J. July 21, 2011) (granting motion to dismiss where the complaint failed to allege that plaintiffs could no longer use the allegedly defective televisions).[5]

### IV. Plaintiff's Unjust Enrichment Count Claims Identical Damages To The Prior Counts And Should Be Dismissed As Duplicative

Plaintiff's unjust enrichment count (Count IV) is duplicative because it seeks identical damages resulting from the same conduct as those sought under Plaintiff's three other claims for relief. Plaintiff's Opposition posits that Plaintiff's unjust enrichment count is not duplicative because it seeks a "constructive trust" and "restitution of the proceeds Defendants received." These monetary damages are the same as those at issue in Plaintiff's other counts, which seek "damages in the form of monies paid [by alleged class members] to

---

[5] Plaintiff's attempt to distinguish *Hughes* is unavailing because *Oblivion*, like the televisions in *Hughes*, remains viable after the manifestation of the alleged defect.

purchase *Oblivion*." The attempted semantic distinction between "restitution of the proceeds" and "monies paid" by class members advanced by the Opposition is a distinction without a difference and compels dismissal of Count IV. (Compl. ¶¶ 67, 73, 81); *Francis v. Mead Johnson & Co.*, Case No. 10 Civ. 701, 2010 WL 5313540 (D. Colo. Dec. 17, 2010).

The Court's holding in *Francis* is directly applicable to this case. In *Francis*, the plaintiff filed a putative class action complaint alleging violation of the CCPA, false representation, failure to disclose, breach of warranty and unjust enrichment based on plaintiff's claim that the labels on defendant's baby formula bottles misrepresented the formula as the only available formula containing certain beneficial hormones. *Id.* at *1. The Court granted defendant's motion to dismiss the unjust enrichment count and held that the count was duplicative because "Plaintiff seeks recovery for the same wrongful conduct as in her CCPA claims" and "seeks the exact same damages for these two claims." *Id.* at *8. Plaintiff's unjust enrichment count likewise should be dismissed as duplicative.[6]

## CONCLUSION

For at least the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint And Jury Demand in its entirety.

---

[6] The case law cited by Plaintiff is inapposite. The Court in *Colorado Foundation, Inc. v. American Cyanamid Co.* held that an award of a Defendants' profits in an unjust enrichment count were not duplicative of reasonably royalty and exemplary damages awarded for the defendant's fraudulent failure to disclose the filing of a patent application to the inventors of the patented material. 216 F. Supp. 2d 1188, 1120 (D. Colo. 2002). In *Harris Group, Inc. v. Robinson*, a jury's award of damages for breach of contract, breach of fiduciary duty, intentional interference with contract, unjust enrichment and common law conversion were held not to be duplicative because the ultimate award reflected "a running tally of the previous damages awards, not an additional assessment of damages." 209 P.3d 1188, 1204 (Colo. App. 2009). Neither of these cases has any application to the facts of this case.

Dated: March 22, 2012            Respectfully submitted,

s/ John T. Williams_____
HINKHOUSE WILLIAMS WALSH LLP
John T. Williams
Jason H. Nash
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jwilliams@hww-law.com
jnash@hww-law.com

George H. Parker
THE LAW OFFICE OF GEORGE H. PARKER
1801 Broadway, Ste. 1500
Denver, Colorado 80202
Telephone: (303) 291-7904
Facsimile: (303) 291-7977
george.parker@zurichna.com

***Attorneys For Defendants ZeniMax Media Inc. and Bethesda Softworks LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Reply in Support of Motion to Dismiss was served upon the following counsel of record by electronic mail through the Court's CM/ECF system on March 22, 2012:

Steven L. Woodrow
Edelson Mcguire LLC
999 W. 18th Street, Suite 3000
Denver, Colorado 80202

*Attorney for Plaintiff*

        s/ George H. Parker
HINKHOUSE WILLIAMS WALSH LLP
John T. Williams
Jason H. Nash
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois  60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jwilliams@hww-law.com
jnash@hww-law.com

George H. Parker
THE LAW OFFICE OF GEORGE H. PARKER
1801 Broadway, Ste. 1500
Denver, Colorado 80202
Telephone: (303) 291-7904
Facsimile: (303) 291-7977
george.parker@zurichna.com

*Attorneys For Defendants ZeniMax Media Inc. and Bethesda Softworks LLC*

4813-4881-4351, v.  1