IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 12-cv-00411-WYD-KLM

LANDIS EDWARDS, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ZENIMAX MEDIA INC., a Delaware Corporation, and
BETHESDA SOFTWORKS LLC, a Delaware Limited Liability Company,

    Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

This matter is before the Court on the Defendants' Motion to Strike Plaintiff's Class Allegations and Incorporated Memorandum of Law (hereafter, "Motion to Strike") [ECF No. 16], filed March 30, 2012. On April 20, 2012, Plaintiff filed a Response [ECF No. 21], and Defendants filed a Reply [ECF No. 27], on May 4, 2012.

II.    <u>FACTUAL BACKGROUND</u>

The following summary of the facts is derived from the allegations set forth in the Complaint, which I accept as true for purposes of this motion. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983). By way of background, the Plaintiff, Landis Edwards ("Mr. Edwards" or "Edwards") is a citizen of Colorado. In or around February of 2010, Mr. Edwards purchased the PlayStation 3 version of the *Elder Scrolls IV: Oblivion Game of the Year Edition* video game (the "Video

Game" or "*Oblivion*") from a GameStop retail store in Denver, Colorado.[1]   *Oblivion* is an action role-playing video game, created by Bethesda Softworks, LLC, a subsidiary of Zenimax Media (collectively, the "Defendants"), in which players develop the characters through a series of quests while simultaneously exploring an open-ended fantasy environment set up by the game.   Although the game features a main quest and storyline, players are encouraged to postpone the main quest to explore the gaming world and perform "side quests" outside of the primary storyline.   Complaint at ¶ 10, [ECF No. 3].   Mr. Edwards purchased the Video Game with the expectation that it would offer open-ended gameplay and unlimited opportunities for exploration, as advertised by Defendants.

However, Mr. Edwards encountered technical difficulties during his initial gameplay.   After approximately 200 hours of playing *Oblivion*, an animation defect (the "Defect") occurred,[2] causing interruptions that precluded further progression.   Specifically, the Defect caused essential animations to freeze, including spell effects, doorways, gateways, bridges, and traps.   Because nearly every quest requires players to utilize these essential elements, players cannot meaningfully progress in the Video Game once the Defect ensues.   To remedy the situation, Mr. Edwards restarted his console and reloaded the saved Video Game several times without success.   He was therefore forced to forfeit his progress and any data related to his initial gameplay.   Mr. Edwards no longer plays *Oblivion* because of the Defect, which remains unfixed.

---

[1] Although Plaintiff's complaint does not specifically allege that he bought the video game at a retail store *in Colorado*, I will draw this inference for purposes of resolving this motion.

[2] Each time an animation occurs an internal counter is increased, and when a certain value is reached the Defect triggers.   [ECF No. 3] at ¶¶ 28-29.

Mr. Edwards now brings this class action complaint pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) "on behalf of himself and all persons or entities residing in the State of Colorado who purchased any version of the *Elder Scrolls IV: Oblivion* video game." Complaint at ¶ 52. He asserts claims of deceptive trade practices, false advertising, breach of implied warranty of merchantability, and unjust enrichment, arising from sales of the allegedly defective video game. Mr. Edwards claims that all members of the class were similarly affected by Defendants' fraudulent, misleading, and unlawful marketing and shipment of a defective product and have been injured by a decrease in the value of their *Oblivion* game. He now seeks injunctive relief from Defendants' allegedly fraudulent and misleading advertising as well as restitution, by way of disgorgement of profits, and damages for the injuries suffered by the class.

In the Motion to Strike, Defendants assert that Mr. Edwards' failure to allege an ascertainable class in this case, precludes this action and therefore it must be struck under Fed. R. Civ. P. 23(d)(1)(D). Specifically, Defendants contend that Plaintiff's class is overbroad because it improperly includes: 1) members that never experienced the Defect; 2) members that have sustained no injury; and 3) members that never received or did not rely on the alleged misrepresentations or omissions. They also argue that the extensive individualized inquiry that would be required to determine whether an individual is properly a member of the class further precludes certification. Finally, Defendants argue that principles of comity disqualify this action in light of a recent decision from the Middle District of Florida, in which the court denied the plaintiff's motion for class certification and struck near identical allegations for lacking an ascertainable class.

In his response, Mr. Edwards argues the Florida case is distinguishable and that Defendants' opposition to class certification is premature as it comes before discovery. He further states that the proposed class definition is proper because membership may be ascertained through objective standards and does not depend on individualized inquires. Finally, he argues that the motion is procedurally improper under Fed. R. Civ. P. 12(g) because Defendants had already filed a Rule 12 motion.

III.     STANDARD OF REVIEW

A class action is a unique procedural device designed for those peculiar circumstances where factual and legal issues are common to a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982). The principal reason for a class action is the saving in resources—*i.e.* judicial economy—that it offers for both the parties and the courts. *Id.* In order to maintain a class action, the plaintiff must satisfy all the requirements of Fed. R. Civ. P. 23. *Kelley v. Mid-America Racing Stables, Inc.*, 139 F.R.D. 405, 408 (W.D. Okla. 1990). More precisely, the plaintiff must satisfy the four prerequisites set forth in Rule 23(a)—(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation—as well as one of the three requirements enumerated in Rule 23(b). Fed. R. Civ. P. 23; *Milonas*, 691 F.2d at 938.

Certification is appropriate only if the court is content, "after a rigorous analysis, that the prerequsites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161. The determination of whether all the Rule 23(a) requirements are met is a matter within the court's sound discretion, though in so determining, the court must accept the allegations as pleaded in the complaint as true. *Milonas*, 691 F.2d at 938; *DG ex. Rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010).

Plaintiff brings this class allegation under Rule 23(b)(3), which requires that I find "that questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Alternatively, Plaintiff seeks certification under Rule 23(b)(2) which allows for a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Under Rule 23(d)(1)(D), I may " require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Before proceeding with my analysis under Rule 23, I will discuss the Florida decision because I find the analysis in that case highly instructive in addressing this matter.

IV.    ANALYSIS

   A.    Principles of Comity

Relying on the principles of comity, Defendants assert that Mr. Edwards' class allegation should be struck in light of the recent decision in *Walewski v. Zenimax Media, Inc.*, in which the court denied near identical allegations for failing to set forth an ascertainable class. *See Walewski v. Zenimax Media Inc.* 2012 WL 847236 (M.D. Fla. Mar. 13, 2012) (Adopting Magistrate Judge's Report and Recommendation); *see also Walewski v. Zenimax Media, Inc.* 2012 WL 834125 (M.D. Fla. Jan. 30, 2012) [hereinafter "*Walewski* Recommendation"] (providing magistrate judge's analysis). In response, Mr. Edwards argues that principles of comity are not controlling because the *Walewski*

court's decision was narrowly tailored to fit a particular plaintiff with respect to Maryland law.

Federal courts are expected "to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2382, 180 L. Ed. 2d 341 (2011).  A review of the allegations contained in this Complaint and the *Walewski* Complaint makes clear that I am addressing "common disputes."  *Compare Edwards* Complaint [ECF No. 3] with *Walewski* Complaint, attached as Exhibit A to Defendant's Motion to Strike [ECF No. 16].  First, the General Allegations in both complaints, including the explanation of the Elder Scrolls Franchise, the Defendants' alleged representations regarding gameplay of *Elder Scrolls IV: Oblivion*, the allegations concerning the animation defect; and the damages suffered by purchasers are all identical.

Second, in both complaints the facts relating to the named Plaintiffs are substantially similar because both named plaintiffs allege that they viewed Defendants' advertisements and representations regarding *Oblivion* gameplay, that they were unaware of the Defect, and that they would have altered their decision to purchase Oblivion if they had known.  Additionally both plaintiffs claim they experienced the Defect while playing *Oblivion*, which impeded gameplay progression and now both plaintiffs no longer play *Oblivion* because of the Defect.  Third, the complaints contain nearly identical claims.  Both complaints allege four causes of action that include two counts of false advertisement in violation of state consumer protection laws; breach of implied warranty of merchantability, and unjust enrichment.  The only difference is that the complaint in this case alleges violations of Colorado consumer protection laws, while

the *Walewski* complaint alleges violations of Maryland consumer protection laws. Fourth, both complaints request the same relief. Finally, and most significantly, both complaints are filed on behalf of virtually identical classes. The only difference is that the *Edwards* complaint addresses all persons or entities residing in Colorado, whereas the *Walewski* complaint addresses all persons or entities residing in the United States. *Compare* Complaint [ECF No. 3] at ¶¶ 52-59 with *Walewski* Complaint [ECF No. 16-1] at ¶¶ 51-58.

Based on the foregoing, it is evident that the *Edwards* and *Walewski* complaints address "common disputes." Ultimately, the *Walewski* court held that "the proposed class . . . [was] not adequately defined and [was] unworkable for certification purposes." *Walewski* Recommendation, 2012 WL 834125 at * 6. It went on to conclude, "the absence of a workable class definition defeats proper analysis of the required Rule 23 showing, as the Court cannot accurately evaluate any of the Rule 23(a) criteria (numerosity, commonality, typicality and adequacy of class representative) without it." *Id.* Given that the complaints and the class definitions in particular are substantially similar, I find the opinion in *Walewski* to be highly persuasive and relevant to the resolution of the Motion to Strike in this matter.

    B. <u>Ascertainable Class</u>

Turning to my own analysis, as explained above, Plaintiff must first satisfy the four prerequisites set forth in Rule 23(a). *Milonas*, 691 F.2d at 938. "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Morris v. Travlers Indem. Co. of America*, 2006 WL 166597, at *7 (D. Colo Jan. 19, 2006) (citations omitted); *see also Low v. Chu*, 2009 WL

4582312, at *3, n. 5 (N. D. Okla. Dec. 1, 2009) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.") (citations omitted). Other courts have chosen to examine a class definition in the context of its numerosity analysis. *See e.g. Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1247 (D.Colo. 1983) (in determining whether the proposed class meets the numerosity requirement, a court must consider whether the class is sufficiently defined so that potential class members can be identified). Under either approach, before I address each prerequisite of Rule 23(a), I must first address the adequacy of Plaintiff's proposed class. *Walewski,* 2012 WL 834125, at *4 (quoting *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D.Fla. 2009) ("Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered."))

A class is sufficiently defined if it is "administratively feasible for the court to determine whether a particular individual is a member." *Davoll v. Webb,* 160 F.R.D. 142, 143 (D. Colo. 1995); *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986) (acknowledging that every single member need not be specifically identified at the commencement of the action). If I can ascertain the members of the class by reference to objective criteria, then the class is adequately defined. *Anderson v. Merit Energy Co.*, 2008 WL 2484187 at *2 (D. Colo. June 19, 2008) (citations omitted). Conversely, a vague definition is inadequate and I may "deny class certification where the class definitions are overly broad, amorphous, and vague." *Id.* (citations omitted).

Here, Mr. Edwards defines the proposed class as: "[a]ll persons or entities residing in the state of Colorado who purchased any version of the *Elder Scrolls*

*IV: Oblivion* video game." Complaint at ¶ 52, [ECF No. 3]. He asserts that the alleged class consists of millions of members, who may be ascertained through objective standards that include people or entities, who: (1) are Colorado residents, and (2) purchased a copy of any version of *Oblivion*. Response at 11, [ECF No. 21].

I find that this definition is inadequate because it is overbroad and includes Colorado residents who presumably purchased Oblivion from anyone, anywhere, at any time regardless of whether he or she was ever injured by or even experienced the alleged Defect. Further, it is not limited to those persons or entities who purchased *Oblivion* from the Defendants and therefore includes people who purchased a copy of the game—new or used—from anyone else. I also note that even if a class of purchaser presently was ascertainable, sales of *Oblivion* will continue, rendering an alleged class of "all purchasers" further unascertainable because membership in the class would be in constant flux.

I agree with the *Walewski* court that "even if the parties were able to identify all purchasers of the game from all sources, the popularity of the game, as described by the parties, makes it especially difficult to cull appropriate class members from the "millions" of game owners, without extensive fact-finding." *Walewski,* 2012 WL 834125 at *5; *see also Shook v. El Paso Co.*, 386 F.3d 963, 973 (10th Cir. 2004) ("[I]n appropriate circumstances a district court may exercise its discretion to deny certification if the resulting class action would be unmanageable or cumbersome.") (citations omitted).

The examples set out by the *Walewski* court demonstrate why this definition

is "fraught with difficulties."  *Id.* at *7.   First, with respect to "persons," the alleged class definition is imperfect.   As explained by the *Walewski* court, "if a teenager purchases a used copy from his brother, he is a class member *even if he has no complaints about the game*, but if his brother gives him the same game as a gift, he is not a class member, *even if he experiences the Alleged Defect.*"   *Id.* at *5.   Moreover, if that same teenager purchases a used copy of the Video Game from his brother, and after having played it (whether or not he experienced the Defect) and gifts it to a friend, he is a class member even though he did not suffer from the effects of the Video Game's decreased value on the secondary market.   In this same example, if the teenager had not played the Video Game before gifting it to his friend, he would neither have experienced the Defect nor suffered from a decreased secondary market value but would still be included in the class.

Likewise, an entity may never experience the Defect and/or suffer from the Video Game's decreased secondary market value.   The *Walewski* court explained that "a video store which buys the second hand game from a consumer and resells it for more than it paid for it is included in the class, despite the fact that the entity itself never experienced the Animation Defect (as it never played the game) and did not suffer any loss."   *Id.* at 5.

Mr. Edwards contends that he and each member of the proposed class suffered from the decreased secondary market value of the Video Game, irrespective of whether they experienced the Defect.   He also asserts that class membership is not dependent on individualized inquires because the claims arise from the Defendants' failure to disclose the Defect and not whether individual

10

class members were deceived by the misrepresentations.  Even so, as the above examples illustrate, under the proposed class definition, those who did not experience the Defect and/or do not suffer from a decreased secondary market value could nevertheless qualify as class members as long as they are Colorado residents who purchased a copy of any version of *Oblivion*.  Therefore, the class definition does not sufficiently delineate which players and owners are correctly included within the class, and I cannot speculate the same.

Turning briefly to Mr. Edwards other arguments, he asserts that Defendants have waived their right to challenge his class allegations because Defendants' motion to strike was filed under Fed. R. Civ. P. 12(f).  Since Defendants previously filed a motion to dismiss under Rule 12(b)(6), Mr. Edwards argues that Rule 12(g) precludes Defendants from a piecemeal challenge.  However, the motion to strike was brought under Rule 23(d)(1)(D) and not Rule 12, so Rule 12(g) does not apply and I find this argument to be without merit.

Mr. Edwards also argues that Defendants' attack on class certification is improper at this stage of the proceeding because assertions about class allegations should first be developed through discovery.  The decision to allow class discovery is within my discretion.  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  "Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations."  *Id.* (noting that absent such a showing, there is no abuse of discretion in refusing to allow class

discovery).   Here, Plaintiff has not made a prima facie showing that the requirements of Rule 23 are satisfied because the class is overbroad.   *See also Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304-05 (D. Colo 1998) (relying on *Mantolete* and explaining that pre-certification discovery is subject to limitations which may be imposed by the court and are within its sound discretion).   To allow discovery when Mr. Edwards has alleged an unascertainable class would be futile.

Accordingly I conclude that the class definition is inadequate and I cannot accurately evaluate the prerequisites set forth in Rule 23 without a workable class definition.

V.      CONCLUSION

Based on the foregoing analysis, I find that Plaintiff's class allegations must be struck because the Plaintiff has failed to define an ascertainable class.   Therefore, it is

ORDERED that the Defendants' Motion to Strike Plaintiff's Class Allegations and Incorporated Memorandum of Law [ECF No. 16], filed March 30, 2012 is **GRANTED** and the Complaint's class allegations are hereby **STRICKEN.**

Dated:   September 25, 2012.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE