## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Case No. 1:12-cv-00411-WYD-KLM

LANDIS EDWARDS, individually and on behalf
of all others similarly situated,

    *Plaintiff*,

v.

ZENIMAX MEDIA, INC., a Delaware Corporation,
and BETHESDA SOFTWORKS, LLC, a Delaware
Limited Liability Company,

    *Defendants*,
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**ARGUMENT** ........................................................................................................................2

**I.  Edwards Should be Granted Leave to Amend Because he Diligently Pursued His Request to Modify the Class Definition and Satisfies Rule 16's "Good Cause" Standard.** ........................................................................................................................3

**II. Amendment is Similarly Appropriate Under Rule 15—It Cures the Defects Found to Exist in the Class Definition, is Made in Good Faith, and Will Not Prejudice Defendants.** ......................................................................................................................6

    **A.  Edwards' proposed modifications narrow the Class Definition, obviate the need for individual inquiries, and more clearly delineate class membership, and thus are not futile.** ..................................................................................................7

    **B.  The amendment is made in good faith, and will not cause prejudice or undue delay.** ..........10

**CONCLUSION** ...................................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**

*Baker v. Thomson*, No. 11-CV-02219, 2012 WL 1658982 (May 11, 2012) ...............................10

*Ballow v. PHICO Ins. Co.*, 878 P.2d 672 (Colo.1994) ................................................................9

*Breakstone v. Caterpillar Inc.*, No. 09 Civ 23324, 2010 WL 2164440
    (S.D. Fla. May 26, 2010) ..........................................................................................................8

*Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ....................................................8

*Calderon v. Kansas Dept. of Soc. & Rehab. Serv.*, 181 F.3d 1180 (10th Cir.1999) ....................10

*Carefree/Scott Fetzer Co. v. Lippert Components, Inc.*, No. 11-CV-03019, 2012 WL 2412044
    (D. Colo. June 26, 2012) .........................................................................................................10

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001) ...........................................8, 9

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ............................................................9

*Cooper & Clough, P.C. v. U.S. Bank Nat. Ass'n*, No. 11-CV-00216, 2011 WL 5075563
    (D. Colo. Oct. 26, 2011) ...........................................................................................................4

*Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056 (D.Colo. 2009) ................3

*Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999) ..........................................................................6

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 69 Fed. R. Serv. 3d 767 (E.D.N.C. 2007) ................6

*Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2012 WL 3594212 (D. Kan. Aug. 21, 2012) .............6

*In re Gen. Motors Corp.*, 383 F. Supp. 2d 1340 (W.D. Okla. 2005) ............................................9

*In re Mascio*, No. 11-CV-02678, 2012 WL 2884812 (D. Colo. July 12, 2012) ............................9

*In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571 (D.N.M. 2010) .....................................5

*Ingle v. Dryer*, No. 07-CV-00428, 2008 WL 1744337 (D. Colo. Apr. 11, 2008) .....................4, 7

*James v. Fenske*, No. 10-CV-02591, 2012 WL 592855 (D. Colo. Feb. 23, 2012) ........................4

*Keenan v. Colorado Dept. of Human Servs.*, No. CIV.A. 05-CV-01933, 2007 WL 433127
    (D. Colo. Feb. 2, 2007) .............................................................................................................4

*Lopez v. Cricket Communc'ns., Inc.*, No. 11-CV-01506, 2012 WL 527206
 (D. Colo. Feb. 16, 2012) ...................................................................................................5

*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204-05 (10th Cir. 2006) ................................. 2, 3, 10

*O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) .................................................................8

*Rivera v. Wyeth -Ayerst Labs.*, 283 F.3d 315 (5th Cir.2002) .........................................................8

*Rogers v. Wesco Properties, LLC*, No. 10-CV-01854, 2012 WL 1018431
 (D. Colo. Mar. 26, 2012) ..................................................................................................2

*Sanders v. Apple, Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009) .........................................................8

*SilFLo, Inc. v. SHFC, Inc.*, 917 F.2d 1507 (10th Cir. 1990) ......................................................3, 4

*Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2011 WL 3240563
 (N.D. Cal. July 29, 2011) .................................................................................................9

*Walewski v. ZeniMax Media Inc. et al.*, Case No. 6:11-cv-1178 (M.D. Fla.) .................................5

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y) .....................................................................8

*Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*,
 No. 2:07-CV-400, 2008 WL 304538 (D. Utah Jan. 31, 2008) ........................................4

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................... 1, 2, 6, 10

Fed. R. Civ. P. 16 ................................................................................................................. 1, 2, 3, 4

Fed. R. Civ. P. 23 ...........................................................................................................................5, 6

**Miscellaneous**

7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.4
 (3d ed. 2005) ....................................................................................................................6

**INTRODUCTION**

As set forth in his opening Motion, Plaintiff Landis Edwards seeks leave to file a first amended class action complaint in order to cure the defects the Court found to exist with the class definition contained in his original complaint. Defendants, however, encourage the Court to commit reversible error and deny Edwards leave to amend, because purportedly, Edwards has not shown good cause to amend after the Court's deadline to do so expired, and because, according to them, amendment would be futile.

Defendants misunderstand the law. As an initial matter, Rule 15 mandates that leave to amend be "liberally granted" and allows for amendment at any "stage in the action". Contrary to Defendants' assertions, the burden is on Defendants to show that amendment is improper, and, under these circumstances—where the Court stayed discovery which mooted the deadline for leave to amend— Edwards is not required to demonstrate good cause to amend under Rule 16. Nonetheless, as Edwards has been diligent throughout this litigation, adequate explanation exists for his (at most) nominal delay, and because no prejudice to Defendants would result, amendment is proper under either standard.

Furthermore, because Edwards' amended class definition cures the deficiencies the Court originally believed warranted striking the class allegations in the first place, his request to amend is not futile. Indeed, the Class, no longer includes "anyone, anywhere, at any time regardless of whether [they were] injured by or even experienced" the Animation Defect. Moreover, Defendants' attempt to convince the Court that that determination of class membership still requires fact-intensive inquiries into whether the Animation Defect has manifested, or whether each individual has sold the game for a decreased value on the secondary market, misses Plaintiff's central theory of the case: that he, as well as the rest of the putative class, suffered the same injury, *immediately at the time of purchase*, when they paid more than they would have for *Oblivion* had Defendants disclosed the existence of the Animation Defect in the

game. Federal courts throughout the country have recognized this type of diminution in value, and this Court shouldn't view it any differently. As such, for these reasons and the reasons stated below, Edwards respectfully requests that the Court grant him leave to file his amended complaint.

**ARGUMENT**

Edwards' request for leave to amend is justified pursuant to Federal Rule of Civil Procedure 15, which allows for amendment at any "stage in the action" and mandates that "leave [to amend] be freely given when justice so requires". *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204-05 (10th Cir. 2006) (citing Fed. R. Civ. P. 15(a)(2)). Edwards' proposed amended complaint represents his first attempt to amend the pleadings, seeks to cure the defects the Court found to exist in the class definition contained in the original complaint in accordance with the Court's September 25, 2012 Order striking the class allegations (the "MTS Order") (Dkt. 32), and will not prejudice Defendants in any way.

As an initial matter, Defendants' claim that "it is this Court's practice," to resolve motions to amend that fall outside the deadline to amend the pleadings through a two-step analysis—requiring Plaintiff to show "good cause" under Rule 16(b)(4), before determining whether Defendants have demonstrated that the proposed amendment is unjustified under Rule 15(a) (Opp. at 8)—is wrong. The Tenth Circuit has not explicitly decided whether a party seeking to amend its pleadings after a scheduled deadline must show "good cause" under Rule 16, and this Court's practice is not as certain as Defendants claim. *See Minter*, 451 F.3d at 1204, fn 4; *see also Rogers v. Wesco Properties, LLC*, No. 10-CV-01854, 2012 WL 1018431, at *2-3 (D. Colo. Mar. 26, 2012) (Hon. Wiley, D.Y.) (recognizing Rule 15(a)'s purpose of "provid[ing] litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties[,]" rejecting the magistrate judge's two-step analysis under Rules 15 and 16, and instead choosing to "proceed with [its] analysis solely under Rule 15(a)") (citations omitted). As such,

Edwards' request to amend does not trigger Rule 16(b)(4)'s requirements, and it is "Defendants' burden to show that the proposed amendment is improper". *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D.Colo. 2009).

Nonetheless, even if the Court believes that a two-step analysis is required, Edwards easily satisfies the requirements of both Rules 16 and 15 under the circumstances here. Specifically, good cause exists to modify the Scheduling Order under Rule 16 because the original deadlines were effectively postponed until the Court lifted its stay on discovery, and once it did, Edwards diligently moved to amend. Moreover, because the Federal Rules anticipate that class definitions will be amended throughout the litigation, that Edwards' amendment is appropriate and was diligently pursued cannot seriously be questioned. Likewise, because Edwards' amendment is limited to curing the defects in the class definition that the Court found to exist in the MTS Order, amendment is not futile, is made in good faith, and will not prejudice Defendants. Accordingly, Edwards should be permitted leave to amend.

**I. Edwards Should be Granted Leave to Amend Because he Diligently Pursued His Request to Modify the Class Definition and Satisfies Rule 16's "Good Cause" Standard.**

Edwards readily satisfies Rule 16(b)(4)'s "good cause" standard because he diligently attempted to meet the scheduling deadlines throughout the course of this litigation, and adequate explanation exists for his inability to do so before the deadline to amend lapsed. *See* Fed. R. Civ. P. 16(b)(4); *see also Minter*, 451 F.3d at 1205, fn 4 (holding that Rule 16(b)(4) requires the "the moving party to show that it has been diligent in attempting to meet the [scheduling] deadlines, which means it must provide an adequate explanation for any delay."); *but see SilFLo, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990) (holding that rigid adherence to the scheduling order is not advisable). Defendants' contention that Edwards was not diligent in seeking to amend because he waited two months until after the original deadline expired, and because he should have been aware of his need to amend earlier, is unsupportable.

3

Foremost, while the Court's Scheduling Order originally set the deadline to amend the pleadings until September 3, 2012, that Order was superseded by the Court's May 17, 2012 Order, which stayed all discovery pending the Court's rulings on Defendants' Motions to Dismiss and Strike, and mooted, among others, the deadline to amend the pleadings. (Dkt. 30.) Because the Court's stay effectively postponed (or mooted) all other previously scheduled deadlines until after that time, Edwards had "good cause" to believe that amendment was not necessary until after those rulings. *See Ingle v. Dryer*, No. 07-CV-00428, 2008 WL 1744337, at *3 (D. Colo. Apr. 11, 2008) (plaintiff "not guilty of lack of diligence and…good cause [was shown]…under Rule 16" where it was uncontested that the deadline to amend past while the proceedings were stayed); *see also Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, No. 2:07-CV-400, 2008 WL 304538, at *2 (D. Utah Jan. 31, 2008) (refusing to hold plaintiffs to the deadline to amend where the case "has been mired in a series of [other] unresolved motions").[1]

Importantly, once the Court issued its MTS Order, Edwards diligently moved for leave to amend less than six weeks later. *See James v. Fenske*, No. 10-CV-02591, 2012 WL 592855, at *3 (D. Colo. Feb. 23, 2012) (finding that a motion to amend filed two months after the amendment deadline "cannot be said to have lacked diligence"). As this Court is aware, "[l]ateness itself does not justify denial of a motion to amend" under Rule 16. *Cooper & Clough, P.C. v. U.S. Bank Nat. Ass'n.*, No. 11-CV-00216, 2011 WL 5075563, at * 2 (D. Colo. Oct. 26, 2011) (citing *Minter*, 451 F.3d at 1205, fn 4).[2]

---

[1] While Edwards reasonably believed that the stay effectively postponed the scheduling deadlines, to the extent the Court disagrees, Edwards' reasonable misunderstanding should not detract from his otherwise diligent efforts. *See Keenan v. Colorado Dept. of Human Servs.*, No. CIV.A. 05-CV-01933, 2007 WL 433127, at *1 (D. Colo. Feb. 2, 2007) ("failure to timely amend may be excused if due to oversight, inadvertence, or excusable neglect.") (citing *Sil–Flo, Inc.* 917 F.2d at 1519).

[2] Notably, Plaintiff originally emailed Defendants to inform them of his intent to move for leave to amend on October 19, 2012. Rather than respond, however, Defendants immediately filed their Renewed Motion to Dismiss and did not reply to Plaintiff until after their motion was filed. As such, Plaintiff's initial efforts to amend were further deterred by his need to address and consider Defendants' Renewed Motion.

Furthermore, Defendants' assertion that Edwards lacked diligence because he should have known of the Complaint's deficiencies after Magistrate Baker's July 30, 2012 denial of class certification in *Walewski*,[3] or when Defendants moved to strike here, is absurd. As made clear in Plaintiff's Motion, the sole purpose of Edwards' amendment is to refine the class definition in line with the Court's MTS Order, which he obviously could not do until after it was issued. And, contrary to Defendants' assertion, Edwards' earlier alternative request for leave to amend doesn't demonstrate an "awareness" that prohibits him from moving to amend now.[4] Edwards believes that he provided the Court with persuasive authority to support the validity of his class definition as originally pled, as well as with ample reason to distinguish *Waleski*. As such, he can hardly be faulted for not operating under the assumption that the Court would find his class definition inadequate. *See e.g. In re Thornburg Mortg.*, 265 F.R.D. at 5832 (permitting amendment where under "[p]laintiffs view of the law, there was no defect"); *see also Lopez v. Cricket Communc'ns., Inc.*, No. 11-CV-01506, 2012 WL 527206, at *1-2 (D. Colo. Feb. 16, 2012) (recognizing that pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome…"). Under the circumstances, Edwards was more than diligent in pursuing the requested amendment.

Finally, Defendants' assertion that leave to amend should be denied because Plaintiff did not allege the modified definition in his original complaint cannot be reconciled with the Federal Rules, which allow for liberal amendment of class definitions throughout the litigation. Indeed, Rule 23 explicitly acknowledges that a class "may be altered or amended before the final judgment[,]" Fed. R. Civ. P.

---

*See In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 582 (D.N.M. 2010) (four month period did not represent undue delay where plaintiff's counsel was "busy preparing responses to" other motions).

[3] *Walewski v. ZeniMax Media Inc. et al.*, Case No. 6:11-cv-1178 (M.D. Fla.) ("Walewski") (Dkt. 54).

[4] Defendants' implicit assertion that Edwards was somehow required to modify the Scheduling Order in his April 20, 2012 Opposition to Defendants' Motion to Strike (Dkt. 21) or during the Court's April 24, 2012 scheduling conference is nonsensical. As explained, the Court did not enter its Scheduling Order until April 26, 2012 (Dkt. 23) and did not enter its order staying discovery until almost a month later. (Dkt. 30.)

23(c)(1)(C), and courts around the country have held the same. *See e.g. Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2012 WL 3594212, at *20 (D. Kan. Aug. 21, 2012) (explaining that "[c]ourts have modified [] classes at the outset of pretrial, the completion of discovery, after summary judgment … at the close of plaintiff class's case-in-chief, and at the completion of the trial on the merits.") (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.4 (3d ed. 2005)).[5] As such, Defendants' assertion that Edwards should not be permitted to amend his class definition runs afoul of well-settled law, and thus, should be rejected.

**II. Amendment is Similarly Appropriate Under Rule 15—It Cures the Defects Found to Exist in the Class Definition, is Made in Good Faith, and Will Not Prejudice Defendants.**

Defendants next argue that Edwards' Motion does not satisfy Rule 15(a)'s requirements because, despite his modifications, his proposed amendment would be futile. (Opp. at 10.) Specifically, Defendants assert that Edwards' amended class definition is inoperable because it continues to include individuals who purchased *Oblivion* from "anyone, anywhere, at any time regardless of whether [they were] injured by or even experienced" the Animation Defect, and because determination of class membership still requires "extensive fact finding". (*Id.*) Defendants additionally make a passing argument—in nothing more than a single footnote—that Edwards' request to amend should be denied because it was untimely, not made in good faith, and would prejudice Defendants. (Opp. at 15, fn 11.) These assertions disregard Edwards' legal theories and the circumstances surrounding this case.

---

[5] Indeed, Defendants' position evidences an untenable belief that a class can *only* exist as originally pled. *See Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (holding it appropriate to modify the class definition "instead of dismissing the proposed action"); *see also Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 69 Fed. R. Serv. 3d 767, at *4 (E.D.N.C. 2007) (permitting proposed amendment to the class definition, over defendant's Rule 16's argument, because "[t]he Federal Rules contemplate such modifications").

### A. Edwards' proposed modifications narrow the Class Definition, obviate the need for individual inquiries, and more clearly delineate class membership, and thus are not futile.

As Edwards' amended class definition limits class membership to only discernable consumers who overpaid for new versions of *Oblivion* during a precise time period, and who suffered identical injuries immediately at the time of their purchase, it addresses each of the concerns outlined in the MTS Order, and thus, cannot be considered futile.[6] *See Ingle*, 2008 WL 1744337, at *1 (amendments may only be denied on futility grounds if the pleadings remain "legally defective" despite the amendment). The argument that the amended class definition remains "overbroad and unascertainable" is wrong.

Foremost, by limiting purchasers to only "natural persons" instead of "all persons and entities[,]" Edwards alleviates the Court's unease that "entities" that may have never "suffer[ed] from the Video Game's decreased secondary market value," would be part of the Class. Moreover, by including only purchasers of new games—rather than any version of *Oblivion*—Edwards addresses the Court's apprehension that the Class—as originally defined—improperly included purchasers who obtained their games on the secondary market, and who therefore may not have experienced a cognizable injury. Further, by setting explicit time parameters for class membership, the Class is no longer in "constant flux", as the Court originally stated was a cause for concern.[7] As such, the amended class definition no longer includes purchasers of *Oblivion* "from anyone, anywhere, at any time[,]" nor is it dependent on individualized inquires.

Defendants' assertion that Edwards' proposed amendment does not cure the Court's concern that the Class includes purchasers "regardless of whether [they were] ever injured by or even experienced the

---

[6] Edwards' amended class definition now seeks to certify "All natural persons residing in the state of Colorado who purchased any new version of *The Elder Scrolls IV: Oblivion* video game from March 20, 2006, until January 4, 2012".

[7] The argument that a time period raises new individual issues to preclude class certification (Opp. at 15), is inapt. Courts regularly certify classes defined by a specified period of time.

Defect[,]" is not true. By narrowing the definition to only include "natural persons" who purchased "new versions" of *Oblivion*, all class members who purchased *Oblivion* will have suffered the same injury because, as Edwards alleges, they did not receive the benefits Defendants lead them to believe they were bargaining for—i.e. "unlimited opportunities" for open-ended gameplay.

This situation—where it is alleged that injury resulted because Edwards and the Class paid for a product that was less valuable than they initially expected—starkly contrasts with the cases relied upon by Defendants, which were "no-injury" product liability suits premised on those defendants' failure to warn consumers of a defective product, *despite that economic injury has not, and may never, occur*.[8] *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001)—a case that addresses and distinguishes the so-called "precedential" theories and cases raised by Defendants—best illustrates this point. In *Coghlan*, the court upheld plaintiff's fraud and deceptive practice claims, which sought "benefit of the bargain" damages resulting from defendant's defective boats, and held that such theory of recovery was neither "novel nor exotic". *Id.* at 452. In doing so, the court outlined the differences between no-injury products liability suits, and the theories of liability presented by Edwards here:

> the wrongful act alleged [here is defendant's] *failure to uphold its end of their bargain and to deliver what was promised*. [In contrast, t]he striking feature of a typical no-injury

---

[8] *See Rivera v. Wyeth -Ayerst Labs.*, 283 F.3d 315, 319-20 (5th Cir.2002) (plaintiff sought to recover for a *potentially* life-threatening defect despite that no economic harm occurred); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y) (rejecting claims where plaintiff alleged only "possible economic loss"); *Briehl v. General Motors Corp.*, 172 F.3d 623, 628-629 (8th Cir. 1999) (same); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504 (8th Cir. 2009) (rejecting the case because it was a "no-injury products liability suit" but noting that "relief could be granted [in cases where plaintiff] did not receive the benefit of the bargain").

The cases referenced to support Defendants' assertion that courts refuse to certify classes of product purchasers where the alleged class members have not experienced a defect (Opp. at 13), are also premised on no-injury theories and are similarly not instructive. *See e.g. Breakstone v. Caterpillar Inc.*, No. 09 Civ 23324, 2010 WL 2164440, at * 6 (S.D. Fla. May 26, 2010) (certification improper where it would have been dependent on manifestation of defect rather than proof of purchase); *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 991 (N.D. Cal. 2009) (alleged class included individuals "who did not purchase" the defective product [and therefore,] suffered no damages.").

class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss. *Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain.*

*Id*. at 455 (emphasis added).[9]

Like *Coghlan*, Edwards alleges that because every version of *Oblivion* is plagued by the Animation Defect, all putative class members suffered an actual cognizable injury, at the time of purchase, when they paid more than they would have had the existence of the Animation Defect been disclosed. (*See* Compl. ¶¶ 40, 66, 67, 73, 79, 81, 83.)[10] As such, it does not matter if the consumer "has no complaints about the game" or has not experienced a "decrease in value" when attempting to sell it on the secondary market. (*See* Opp. at 11.) The injury here resulted immediately at the time of purchase, and the Class is ascertainable—without individual inquiry—by that measure. As such, courts have, and this Court can, uphold Edwards' class allegations based on his alleged "benefit of the bargain" theory. *See Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2011 WL 3240563, at *4 (N.D. Cal. July 29, 2011). Thus, Edwards' proposed amendment cures the legal defects the Court previously believed rendered the Class non-certifiable and thus, shouldn't be considered futile.

---

[9] Despite Defendants' contentions, various cases throughout the country, and indeed courts in this Circuit, recognize this distinction and hold that a cognizable injury exists under these circumstances. *See e.g. Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722-23 (5th Cir. 2007) (holding that plaintiff could bring claims under a contract theory based on the express and implied warranties, and distinguishing *Rivera* because plaintiff, "assert[ed] their own actual economic injuries…at the moment they purchased [the product] because each [product] was defective"); *In re Gen. Motors Corp.*, 383 F. Supp. 2d 1340, 1342 (W.D. Okla. 2005) (similarly distinguishing *Briehl* and *Rivera*).

[10] This theory of recovery is well established under Colorado law. *See In re Mascio*, No. 11-CV-02678, 2012 WL 2884812, *1 (D. Colo. July 12, 2012) (Under Colorado law, "the measure of damages in [fraud] cases is the 'benefit of the bargain' rule, designed to give a plaintiff his or her expectation interest for loss of bargain.") (quoting *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 n. 5 (Colo.1994)).

### B. The amendment is made in good faith, and will not cause prejudice or undue delay.

Defendants' last-ditch attempt to assert that Edwards' Motion was unduly delayed, not filed in good faith, and would result in prejudice to Defendants (Opp. at 15, fn 11), similarly fall flat. As previously discussed, any delay in seeking amendment was minimal, justified, and certainly not "undue." Edwards requested leave to amend less than six weeks after the stay was lifted, diligently pursued his case during that time, and trial would still be months away. *See Minter*, 451 F.3d at 1205 (impermissible delay only occurs where it is "undue" and the "party filing the motion has no adequate explanation"; "[l]ateness does not itself justify the denial of the amendment."); *see also Baker v. Thomson*, No. 11-CV-02219, 2012 WL 1658982, at *2 (May 11, 2012) (no delay where trial was "eleven months away" and defendant had "ample opportunity to respond").

Likewise, because Edwards seeks leave to amend as a direct result of the Court's MTS Order, and because he does not seek to modify his original allegations, it is clear that his amendment is made in good faith and will not prejudice Defendants. *See Carefree/Scott Fetzer Co. v. Lippert Components, Inc.*, No. 11-CV-03019, 2012 WL 2412044, at *2 (D. Colo. June 26, 2012) (no bad faith where plaintiff "narrow[s] or simplify the issues" and the amendments did not "directly contradict the allegations in the original complaint"). Defendants' plea that prejudice would result from restarting the class certification process if Edwards was permitted to amend, is not persuasive. Permitting an opposing party to defeat a motion for leave to amend by claiming the subjects at issue were briefed in earlier motions "would undermine the liberal policy toward granting motions for leave to amend to allow claims to be heard on their merits." *Calderon v. Kansas Dept. of Soc. & Rehab. Serv.*, 181 F.3d 1180, 1186 (10th Cir.1999) (citation omitted).

As such, Defendants cannot meet their burden of demonstrating why granting leave to amend would be improper under Rule 15(a), and Edwards should be permitted to file his Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff Landis Edwards respectfully requests that the Court enter an Order (1) granting his Motion for Leave to file his proposed First Amended Class Action Complaint, (2) permitting oral argument on this Motion, and (3) providing all other and further relief that the Court deems reasonable and just.

Dated: December 3, 2012						Respectfully submitted,

								/s/ Steve Lezell Woodrow
								*One of Plaintiff's Attorneys*


EDELSON MCGUIRE, LLC
Steve Lezell Woodrow
99 18th Street, Suite 300
Denver, CO 80302
Tele: (303) 357-4878
Fax: (312) 589-6378
swoodrow@edelson.com

Rafey S. Balabanian (admitted *pro hac vice*)
Eve-Lynn J. Rapp (admitted *pro hac vice*)
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tele: (312) 589-6370
Fax: (312) 58906378
rbalabanian@edelson.com
erapp@edelson.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on December 3, 2012, he caused the forgoing ***Plaintiff's Reply in Support of Motion for Leave to File Amended Class Action Complaint*** to be electronically filed using the Court's CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: December 3, 2012                                       Respectfully submitted,

                                                                                        /s/ Steve Lezell Woodrow