IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-00411-WYD-KLM

LANDIS EDWARDS, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

ZENIMAX MEDIA INC., a Delaware Corporation, and BETHESDA SOFTWORKS LLC,
a Delaware Limited Liability Company,

      Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Plaintiff's Motion for Leave to File

Amended Class Action Complaint and Incorporated Memorandum of Law filed

November 2, 2012.  Plaintiff seeks leave to file an Amended Class Action that

purportedly remedies the deficiencies I found in my Order of September 25, 2012, which

struck the class allegations in the original complaint.  A response in opposition to

Plaintiff's motion was filed on November 19, 2012, and a reply was filed on December 3,

2012.  For the reasons discussed below, Plaintiff's motion is denied.

      By way of background, Plaintiff alleges in this case that a uniform design defect,

present in each and every new copy of Defendant's video game, *The Elder Scrolls IV:*

*Oblivion* ("*Oblivion*"), has diminished the value of the game and caused injury to millions

of consumers.  In the original Complaint, Plaintiff sought to certify a class of "[a]ll

persons or entities residing in the State of Colorado who purchased any version of the

*Elder Scrolls IV: Oblivion* video game", subject to certain exclusions which are not

relevant to my analysis.

By Order of September 25, 2012, I struck the class allegations, finding that

Plaintiff failed to define an ascertainable class and that the class was overbroad.  As

noted in my Order, the class:

> includes Colorado residents who presumably purchased Oblivion from
> anyone, anywhere, at any time regardless of whether he or she was ever
> injured by or even experienced the alleged Defect.  Further, it is not limited
> to those persons or entities who purchased *Oblivion* from the Defendants and
> therefore includes people who purchased a copy of the game—new or
> used—from anyone else. . . . [E]ven if a class of purchaser presently was
> ascertainable, sales of *Oblivion* will continue, rendering an alleged class of
> "all purchasers" further unascertainable because membership in the class
> would be in constant flux.

(Sept. 25, 2012, Order at 9, ECF No. 32.)

I further found under principles of comity that decisions involving a similar class

allegation in another case against Zenimax Media, Inc were "highly persuasive and

relevant to the resolution" of the motion to strike.  (September 25, 2012 Order at 7)

(citing *Walewski v. Zenimax Media Inc.* 2012 WL 847236 (M.D. Fla. Mar. 13, 2012)

(Order Adopting Magistrate Judge's Report and Recommendation); *Walewski v.*

*Zenimax Media, Inc.* 2012 WL 834125 (M.D. Fla. Jan. 30, 2012) (Recommendation of

Magistrate Judge)).  I "agree[d] with the *Walewski* court that 'even if the parties were

able to identify all purchasers of the game from all sources, the popularity of the game,

as described by the parties, makes it especially difficult to cull appropriate class

members from the 'millions' of game owners, without extensive fact finding.'" (*Id.* at 9)

(quoting *Walewski*, 2012 WL 834125, at *5).

Plaintiff now seeks to file an amended class action complaint solely in order to

refine the class definition in accordance with the Court's Order.  The new class

definition includes "[a]ll natural persons residing in the state of Colorado who purchased

any new version of The Elder Scrolls IV: Oblivion video game from March 20, 2006, until

January 5, 2012", again with certain exceptions not relevant to the instant motion.

(Proposed Pl.'s First Am. Class Action Compl., ¶ 52, Ex. A to Pl.'s Mot. for Leave to File

Am. Class Action Compl.)

II.   ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be

freely given when justice so requires."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204

(10th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)(2)).  "The liberal granting of motions for

leave to amend reflects the basic policy that pleadings should enable a claim to be

heard on its merits."  *Calderon v. Kansas Dep't of Social And Rehabilitation Servs.*, 181

F.3d 1180, 1186 (10th Cir. 1999).  Refusing leave to amend is generally only justified

upon a showing of undue delay, undue prejudice to the opposing party, bad faith or

dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility

of amendment."  *Frank v. U.S. West*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Plaintiff argues that his motion to amend should be granted because he has met

the requirements for amending under Rule 15 and because the newly proposed class

definition addresses each of the Court's concerns identified in the September 2012

Order.  In that regard, he contends that the amendment to the class definition is narrowly tailored to include only those objectively identifiable consumers who were harmed by Defendants' alleged unlawful conduct.  Specifically, the amended class definition now: (I) limits purchasers to only "natural persons" instead of "all persons and entities," (ii) ensures that the class members are only purchasers of new games—rather than any version, and (iii) sets explicit time parameters for class membership, so that the class is not in "constant flux."  Plaintiff asserts that the amended class definition limits membership to the discernible set of consumers who overpaid for new versions of *Oblivion* during a precise time period prior to the commencement of this action.  Thus, he argues that the primary concern of the Court—that the proposed class definition would include all individuals who purchased *Oblivion* from "anyone, anywhere, at any time"—is addressed by the proposed amendment.

Defendants argue that Plaintiff's proposed amendment is futile.  They assert that the proposed class definition again sets forth a putative class that is both overbroad and unascertainable.  They further assert that the Court's September 2012 Order rejected Plaintiff's argument that injury results regardless of whether the alleged Defect manifests–a decision in accord with established precedent from around the country holding that where an alleged defect does not manifest, a purchaser/putative class member does not have a cognizable cause of action and cannot be a member of a class.  Far from correcting the fundamental inadequacies of the stricken class definition, Defendants contend that Plaintiff's proposed class definition offers only three changes that are inconsequential, wholly fail to render the class ascertainable, and raise new

individualized inquiries that further preclude certification of any class.  Finally,

Defendants argue that Plaintiff has not shown good faith for seeking leave to amend

after the deadline for amendment of pleadings.

Turning to my analysis, I first address whether the proposed amendment is futile.

"A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). "The futility

question is functionally equivalent to the question whether a complaint may be

dismissed for failure to state a claim. . . ." *Id.*

Defendants focus primarily on the fact that Plaintiff's proposed amendment to the

class definition does not correct the concern articulated in my September 2012 Order

that the class definition is inadequate because it is overbroad and includes persons who

purchased Oblivion regardless of whether they were ever injured by or even

experienced the alleged Defect.  (September 25, 2012 Order at 9.)  I found that a

person may never experience the Defect and/or suffer from Oblivion's alleged

decreased secondary market, and thus would not suffer any loss.  (*Id.* at 10-11.)

Plaintiff has now cited cases that better support his theory of damages—that

class members suffered economic injury at the time of the purchase of the product

when they purchased the product because the Defect was not revealed, meaning that

they did not receive the benefit of the bargain.  *See, e.g., Cole v. General Motors Corp.*,

484 F.3d 717, 722-23 (5th Cir. 2007); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449

(5th Cir. 2001).  The Fifth Circuit in *Coghlan* distinguished this type of claim from a

typical products liability cases, stating that "[t]he key distinction . . . is that the Coghlans'

claims are rooted in basic contract law rather than the law of product liability: the

Coghlans assert they were promised one thing but were given a different, less valuable

thing."  240 F.3d at 455 n. 4.  It further explained:

> The wrongful act in a no-injury products suit is thus the placing of a
> dangerous/defective product in the stream of commerce. In contrast, the
> wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end
> of their bargain and to deliver what was promised. The striking feature of a
> typical no-injury class is that the plaintiffs have either not yet experienced a
> malfunction because of the alleged defect or have experienced a malfunction
> but not been harmed by it. Therefore, the plaintiffs in a no-injury products
> liability case have not suffered any physical harm or out-of-pocket economic
> loss. Here, the damages sought by the Coghlans are not rooted in the
> alleged defect of the product as such, but in the fact that they did not receive
> the benefit of their bargain. . . .

*Id.*

I first note that Plaintiff has not cited, and I have not found, any authority in this

Circuit accepting this theory.  I am not convinced that the Tenth Circuit would adopt the

holding of *Coughlin* or the cases relied on by Plaintiff as it does not appear that the

class members suffered an actual injury.  For example, as noted in my September 2012

Order, under the proposed amended class definition, every purchaser of a new copy of

the game "is a class member *even if he has no complaints about the game*, but if his

brother gives him the same game as a gift, he is not a class member, *even if he*

*experiences the Alleged Defect*."  (September 25, 2012 Order at 10) (quoting *Walewski*,

2012 WL 834125 at *5 (emphasis in original)).  Every purchaser of a new copy of the

game under the proposed class definition who "after having played it (whether or not he

experienced the Defect)[,] gifts it to a friend, [also] is a member of the class even though

he did not suffer from the effects of the Video Game's decreased value on the

secondary market." (*Id.*)  "In this same example, if the [purchaser] had not played the Video Game before gifting it to his friend, he would neither have experienced the Defect nor suffered from a decreased secondary market value but would still be included in the class." (*Id.*)

Moreover, even if Plaintiff's theory of recovery is cognizable, there are other problems with the class definition.  The proposed amended class definition continues to include people who purchased the game from anyone, and is not limited to purchases from the Defendants.  (*See* September 25, 2012 Order at 9.)  As noted in the *Walewski* case, there is a strong secondary market for video games that allows consumers to sell both new and used games to others.  *Walewski*, 2012 WL 834125, at *4.  As further noted in that case, "it is likely that an untold number of games were purchased through third parties in completely private transactions through various informal means and without any direct involvement (and thus outside the knowledge or control) of Defendants."  *Id.*  As in that case, Plaintiff "does not propose any method of identifying these secondary market purchasers sufficient to determine who is entitled to notice of the suit and who will be bound by any resulting judgment."  *Id.*

I also found in my September Order that Plaintiff's class allegations were unascertainable because "'even if the parties were able to identify all purchasers of the game from all sources, the popularity of the game, as described by the parties, makes it especially difficult to cull appropriate class members from the 'millions' of game owners, without extensive fact finding.'"  (September 25, 2012 Order at 9) (quoting *Walewski*, 2012 WL 834125 at *5.)  This problem remains in Plaintiff's proposed class definition.

The amended class definition thus remains overbroad and unascertainable.  *See, e.g.,*
*Jaramillo v. Garda, Inc.*, No. 12 Civ. 662, 2012 WL 4955832, at *6 (N.D. Ill. Oct. 17,
2012) (denying motion for leave to amend where the court found "that even if it granted
Plaintiffs leave to amend their class definition, the class would still suffer the same flaws
as the current class definition").

Finally, while not dispositive of my ruling, I note that Plaintiff's motion was filed
two months after the deadline for amendment of pleadings set by the Court's
Scheduling Order.  Plaintiff failed to properly move for leave to amend in response to
Defendants' Motion to Strike Plaintiff's Class Allegations.  A request for leave to amend
in response to a motion is not sufficient.  *See* D.C.COLO.LCivR 7.1.C; *Grigs v.*
*Jornayvaz*, No. 09 Civ. 629, 2010 WL 4932674, at *12 (D. Colo. Nov. 29, 2010)
(denying request for leave to amend complaint made "[i]n a single sentence at the
conclusion of [plaintiff's] brief" because "[t]he Local Rules in this District state that a
'motion shall not be included in a response or reply to the original motion,' but rather
'shall be made in a separate paper'").  Plaintiff further failed to move to extend or stay
the Scheduling Order before the deadlines lapsed for amendment of pleadings and for
class certification.[1]  This does not demonstrate good cause.  *See Allen v. Allen*, No. 10
Civ. 2207, 2011 WL 4018029, *3 (D. Colo. July 13, 2011) (denying motion for leave to
amend complaint where "Plaintiff could have readily included this proposed claim in his
original pleading or at the very least before the deadline for amendment of pleading" but

___

[1]  I reject Plaintiff's argument that the stay of discovery effectively postponed the scheduling
deadlines.

did not do so); *Squires v. Goodwin*, No. 10 Civ. 309, 2012 WL 37508, *6 (D. Colo. Jan.

9, 2012) (denying motion for leave to amend filed after expiration of deadline in

scheduling order because "[t]he Federal Rules of Civil Procedure will not necessarily

protect a party from the unforeseen consequences of their own litigation strategy"); *see*

*also Lewis v. Wells Fargo Bank N.A.*, No. 11 Civ. 3387, 2012 WL 4097709, *11 n. 4

(D. Colo. Aug. 21, 2012) (Mix, M.J.) ("it this Court's practice, and indeed the practice of

other judges in this District, to resolve untimely motions to amend first by considering

the Rule 16(b)(4) good cause standard as a threshold issue  . . . .if good cause is not

shown, the Court is not required to consider whether Rule 15(a) excuses that failure").

Based on the foregoing, it is

ORDERED that Plaintiff's Motion for Leave to File Amended Class Action

Complaint and Incorporated Memorandum of Law filed November 2, 2012 (ECF No. 37)

Is **DENIED**.

Dated:  May 28, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge