IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-00411-WYD-KLM

LANDIS EDWARDS, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

ZENIMAX MEDIA INC., a Delaware Corporation, and BETHESDA SOFTWORKS LLC, a Delaware Limited Liability Company,

     Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendants' Renewed Motion to Dismiss and Incorporated Memorandum of Law.  The motion is fully briefed.  For the reasons discussed below, Defendants' Renewed Motion to Dismiss is denied.

By way of background, Plaintiff asserts claims for an alleged violation of the Colorado Consumer Protection Act ["CCPA"], breach of implied warranty of merchantability, fraud by omission, and restitution/unjust enrichment.  Plaintiff seeks damages and injunctive relief based on Defendants' alleged deceptive and unlawful conduct in designing, manufacturing, marketing, distributing and selling a defectively designed video game to consumers.  (Compl. ¶ 1.)

Plaintiff's claims relate to an alleged inherent design defect in the form of "a universal animation defect" [hereinafter "Animation Defect"] that is allegedly present in

Defendants' video game, *The Elder Scrolls IV: Oblivion* ["*Oblivion*"].  (Compl. ¶¶ 21, 23.)
This alleged defect, "once manifested, effectively ends the player's game and forces
him or her to restart *Oblivion* from scratch with an entirely new character."  (*Id.* ¶ 23.)
According to Plaintiff, "[t]he existence of the Animation Defect significantly decreases
the value of the *Oblivion* video game to consumers."  (*Id.* ¶ 39.)  Instead of "open-ended
gameplay" that was the primary reason Plaintiff purchased the game (*id.* ¶ 43), it is
alleged that "the Animation Defect severely limits *Oblivion*'s gameplay after moderate
use, resulting in consumers receiving a less valuable product than they initially paid for
and expected."  (*Id.* ¶ 40.)

I note that the complaint sought to certify a class action of "[a]ll persons or
entities residing in the State of Colorado who purchased any version of the *Elder Scrolls
IV: Oblivion* video game.  (Compl. ¶ 52.)  The class allegations in the complaint were
stricken by Order of September 25, 2012.  Further, by Order of May 28, 2013, I denied
Plaintiff's Motion for Leave to File Amended Class Action Complaint.  Accordingly, the
complaint is now limited to Plaintiff's claims against the Defendants.  I note, however,
that this case was removed to this Court from the state court pursuant to the Class
Action Fairness Act, 28 U.S.C. § 1332(d).  (*See* Notice of Removal at 2, ECF No. 1.)
Since the class allegations have been stricken, I must determine at the outset whether
the Court retains subject matter jurisdiction over the case.

On that issue, Defendants state their belief that the Court retains subject matter
jurisdiction over the case.  Thus, they do not seek dismissal on that basis.  Defendants
are correct that this is apparently an issue of first impression in this Circuit.  The Sixth,

Seventh, Eighth, Ninth and Eleventh Circuits have, however, held that a federal district court retains jurisdiction over a case filed or removed under the Class Action Fairness Act, 28 U.S.C. § 1332(d), following the denial of class certification or the striking of class allegations. *Metz v. Unizan Bank*, 649 F.3d 492, 500-501 (6th Cir. 2011); *Buetow v. A.L.S., Enters., Inc.*, 650 F.3d 1178, 1182 n. 2 (8th Cir. 2011); *United Steel Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010); *Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009). Further, the court in *Burdette v. Vigindustries, Inc.*, No. 10-1083-JAR, 2012 WL 5505095, at *2 (D. Kan. Nov. 13, 2012), predicted "that the Tenth Circuit would follow the other courts of appeal that have considered whether the denial of class certification divests the federal courts of jurisdiction in a case properly removed under CAFA." I agree, and therefore find that the Court retains subject matter jurisdiction of this case. Thus, I turn to the merits of the motion to dismiss.

II.   ANALYSIS

   A.   Standard of Review

   Defendants seek to dismiss Plaintiff's claims under Fed. R. Civ. P. 9(b) and/or 12(b)(6). In reviewing a motion filed pursuant to Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). "[A] plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted). "A claim has facial plausibility when the [pleaded] factual

content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)).  Thus, a plaintiff "must include enough facts to 'nudge[] his claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted).  Conclusory allegations are not sufficient.  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

Alternatively, a claim may be dismissed for failure to plead fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires that the circumstances constituting fraud or mistake be stated with particularity.  The Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted).  The purpose of the rule is to afford a defendant fair notice of the claims and the factual ground upon which they are based.  *Id.*

    B.    <u>The Merits of Defendants' Motion</u>

        1.    <u>Whether the Complaint Should Be Dismissed for Lack of Personal Jurisdiction</u>

Defendants first argue that the complaint should be dismissed because it fails to set forth any facts demonstrating that they are subject to personal jurisdiction in Colorado.  I note that Plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light.  *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  Plaintiff's

allegations must be taken as true, since Defendants did not file an affidavit contradicting them. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995).

Personal jurisdiction is established by the laws of the forum state, in this case Colorado, and must comport with constitutional due process. *Fireman's Fund Ins. Co. v. Thyssen Min. Constr. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012). Colorado's long-arm statute is coextensive with constitutional limitations imposed by the due process clause. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Due process is satisfied as to a nonresident defendant for purposes of personal jurisdiction "if there are sufficient 'minimum contacts between the defendant and the forum State.'" *Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quotations omitted). The minimum contacts may be shown either through specific or general jurisdiction. *Id.*

For specific jurisdiction to exist, "the defendant must have sufficient minimum contacts with the forum state, and jurisdiction over the defendant cannot offend 'traditional notions of fair play and substantial justice.'" *Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quotation omitted). "The minimum contacts must show that 'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Id.* (quotations and internal quotation marks omitted). The contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit. *Id.* (quotation omitted). The litigation must also result from alleged injuries that arise out of or relate to the defendant's activities in the forum state. *Id.* General jurisdiction requires that a defendant have contacts with the forum "'so continuous and systematic as to render [it] essentially at home in the forum State.'"

*Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quotation omitted). "Unlike for specific jurisdiction, the litigation need not arise from the defendant's activities in the forum." *Id.*

In the case at hand, Plaintiff does not address the issue of personal jurisdiction in his response to the motion to dismiss, and Defendants did not pursue this argument in their reply brief. I thus turn to the allegations in the complaint to determine whether Plaintiff has established a prima facie case of jurisdiction.

Plaintiff alleges that Defendants are incorporated or organized and existing under the laws of the state of Delaware with their principal place of business in Rockville, Maryland. (Compl. at 2, ¶¶ 4, 5.) He also alleges that:

- "Defendant transacts business in Florida and throughout the country." (*Id.* ¶ 5.)

-  "Bethesda is a wholly owned subsidiary of Defendant ZeniMax." (*Id.*)

- "Plaintiff purchased his copy of Defendants' defective video game in Denver County. . . ." (*Id.* ¶ 2.)

- The action seeks "damages and injunctive relief based on Defendants' deceptive and unlawful conduct in designing, manufacturing, marketing, distributing and selling a defectively designed video game to consumers in Colorado and throughout the nation." (*Id.* ¶ 1.) "Jurisdiction is proper in this District Court, as it is a court of general jurisdiction." (*Id.*)

I find from a review of the allegations that Plaintiff has not made out a prima facie showing of general jurisdiction—he has not shown that Defendants have contacts with Colorado "'so continuous and systematic as to render [it] essentially at home'" in this forum state. *Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quotation omitted). Thus, I turn to the issue of specific jurisdiction.

-6-

The placement of goods into the stream of commerce "'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment'" for purposes of specific jurisdiction.  *J. McIntyre Machinery, Ltd. V. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780, 2788 (2011) (quotation omitted).  In that circumstance, however, the exercise of jurisdiction is permitted "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state."  *Id.*  Purposeful availment can be shown through allegations that the defendant expected that the product would go into the forum state or was "'aware that the final product is being marketed in the forum.'"  *Monge v. R-G Petro-Machinery (Group) Co., Ltd.*, 701 F.3d 598, 620 (10th Cir. 2012) (quotation omitted).

Construing the evidence in the light most favorable to Plaintiff as I must for purpose of the motion to dismiss, I find that Plaintiff's allegations support a finding of specific jurisdiction.  He alleges that Defendants engaged in deceptive and unlawful conduct by "designing, manufacturing, marketing, distributing and selling a defectively designed video game to consumers in Colorado and throughout the nation."  (Compl. ¶ 1.)  This can be construed to support an inference that Defendants expected that the *Oblivion* video game would be sold and distributed in Colorado.  Further, this supports an inference that Defendants' conduct was such that they should have reasonably anticipated being haled into court in Colorado.  *Monge*, 701 F.3d at 613.  If Defendants continue to maintain that personal jurisdiction is not proper, this should be dealt with through discovery and the presentation of affidavits in a summary judgment motion.

2.     The Fraud-Based CCPA Counts

Defendants next argue that Plaintiff's first claim for violation of the CCPA, C.R.S.

§ 6-1-101, *et seq.*, and third claim for fraudulent omission, fail to state a claim and

should be dismissed for at least the following three reasons: (i) the complaint fails to set

forth any alleged misrepresentation or omission by Defendants with the requisite

specificity under Fed.R.Civ.P. 9(b); (ii) the alleged misrepresentations and omissions do

not constitute a deceptive trade practice or actionable fraudulent statement or omission;

and (iii) the alleged defect in Plaintiff's copy of *Oblivion* does not significantly impact the

public and does not violate the CCPA.

I first address whether Plaintiff's allegations as to misrepresentations under the

CCPA meet the heightened particularity requirement of Rule 9(b).  Defendants assert

that the complaint fails to attribute any allegedly deceptive statement to them, fails to

allege when any of the allegedly deceptive statements were made, and fails to identify

with particularity which of the allegedly deceptive statements, if any, Plaintiff actually

relied upon prior to purchasing *Oblivion*.  They further assert that the complaint alleges

only that "someone from Defendants made a statement that was posted online at some

time." *Western Gas Processors, Ltd. v. Enron Gas Processing Co.*, No. 87-A-1472,

1988 WL 73307, at *5 (D. Colo. 1988).  Plaintiff argues in response that he satisfies

Rule 9(b)'s particularity requirements by alleging in detail the "who, what, where, when,

and how" of Defendants' alleged fraudulent conduct.

Specifically, Plaintiff alleges that Defendants failed to disclose to him (the who)

the Animation Defect and its effects on gameplay (the what) in advertisements, at

the time Plaintiff purchased the product, or when Defendants became aware of these facts (the where and when), and that he would not have purchased *Oblivion*, or would have paid less for it, if such facts had been disclosed.  He references paragraphs 42 through 51 of the Complaint.  However, the referenced allegations do not support Plaintiff's argument.  Instead, they describe Plaintiff's purchase of and playing of the game and the "technical defects" he experienced during play, including the Animation Defect.  The only allegations in those paragraphs that could reasonably be construed to relate to the allegedly deceptive statements are that "Plaintiff viewed Defendants' online and print advertisements and representations regarding the scope, longevity and nature of the gameplay purportedly featured in the *Oblivion* video game", that "[t]he purportedly open-ended gameplay of *Oblivion* was the primary reason that plaintiff purchased the game", and that "[a]s encouraged by Defendants, Plaintiff created and began to develop a unique character within the game."  (Compl. ¶¶ 43, 46.)  Those allegations do not, however, describe the statements with specificity or allege in detail the "who, what, where, when, and how" of Defendants' alleged fraudulent conduct.

Plaintiff then points to alleged specific misrepresentations about *Oblivion* made by Defendants.  He alleges that Defendants: (1) published a widely-distributed online description of *Oblivion*, which appeared on numerous websites including Amazon.com and video game retailer Gamestop.com and which claimed that *Oblivion* offered "free-form" and "open-ended" gameplay in an "enormous world" that "allow[ed] players to explore at their own pace[,]" (Compl. ¶ 12); (2) represented in the instruction manual of *Oblivion* that the game "offers unlimited possibilities[,]" (*id.* ¶ 13); and (3) sponsored, on

Bethesda's official blog, an "Oblivion Iron Man" contest that offered a prize to the player with the longest single-character gameplay time, which Defendants presumed would exceed 1000 hours" (*id.* ¶ 18).[1]   The complaint also alleges that "prior to purchasing the *Oblivion* video game, Plaintiff viewed Defendants' online and print advertisements and representations regarding the scope, longevity and nature of the gameplay purportedly featured in the *Oblivion* video game." (*Id.* ¶ 43.)

I note that the above representations are relevant only to Plaintiff's CCPA claim, as he does not allege a fraud claim as to such representations.   Even if I assume the allegations stated in the previous paragraph accurately identify the type, content, and location of each misrepresentation, I agree with Defendants that some of these are not actionable.   First, the fact that Defendants sponsored a contest involving the longest single-character gameplay time, which Defendants presumed would exceed 1000 hours, is not a statement of fact at all.

Second, I find that the representations that *Oblivion* offered gameplay in an "enormous world" that "allow[ed] players to explore at their own pace" are statements of opinion, as they are "unquantifiable" or subjective representations that are not "subject to measure or calibration."   *Park Rise Homeowners Ass'n, Inc. v. Resource Constr. Co.*, 155 P.3d 427, 436 (Colo. App. 2006).   The meaning of these statements would depend on the speaker's frame of reference.   *Id.*   Statements of opinion are not actionable, whether in a deceptive trade practice or CCPA claim.   *See Vitt v. Apple Computer, Inc.*,

---

[1]   While Plaintiff asserts that the complaint alleged that Defendants represented on the official blog that players could play over "1000 hours" with a single game character and save file, that is not what was alleged in paragraph 19.   Instead, I have cited to the actual words stated in that paragraph.

469 F. App'x 605, 607 (9th Cir. 2012) (affirming district court's finding that Apple's advertising wherein it "stated that the iBook G4 is "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop" were "generalized, non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'"); *Wolfe v. Canyon Sudar Partners, LLC*, No. 07 Civ. 1189, 2008 WL 4752831 (D. Colo. Sept. 12, 2008) (holding that "[w]ords such as 'skilled' or 'experienced' or 'attractively presented' are too subjective" to qualify as deceptive trade practices); *Koch v. Kaz USA, Inc.*, No. 09 Civ. 2976, 2011 WL 2610198, at *5 (D. Colo. July 1, 2011) ("the use of statements 'Durable;' and 'Quality Construction for Long Last Performance' … do not constitute unfair or deceptive trade practices as a matter of law"); *Park Rise,* 155 P.3d at 435-36 (Colo. App. 2006) (literature touting "quality construction" was mere puffery or a statement of opinion).

It is a closer call as to the statements that *Oblivion* presents "free-form" or "open-ended" gameplay with "unlimited possibilities".  Plaintiff alleges that "[t]he terms "free-form," "open-ended," and "open-world" gameplay have a distinct and tangible meaning in the video gaming community, including to Plaintiff and members of the Class." (Compl. ¶ 15.)  He also alleges that "[g]amers generally understand that such terms describe a game environment that allows players to play creatively, free of artificial structural constraints, and with there being "no right way" to play the game, and that "game developers such as Bethesda use these descriptors to induce gamers to

purchase their video games." (*Id.*)  I find, construing all inferences in favor of Plaintiff, that these represent actionable statements of fact for purposes of Plaintiff's CCPA claim.[2]  Thus, while some of the alleged misrepresentations Plaintiff claims are not actionable, I will deny the motion to dismiss that seeks to dismiss the first claim in its entirety as there are actionable representations.

Defendants also argue, however, that Plaintiff's claim fails under Rule 9(b) because he does not identify which advertisements he viewed.  On that issue, Plaintiff alleged that he "viewed Defendants' online and print advertisements and representations regarding the scope, longevity and nature of the gameplay purportedly featured in the *Oblivion* video game" prior to purchasing the game and that "[t]he purportedly open-ended gameplay of *Oblivion* was the primary reason" that he purchased the game.  (Compl. ¶ 43.)  Plaintiff detailed the advertisements he was relying on in the complaint and, construing all inferences in favor of Plaintiff, it must be assumed that he viewed all the referenced allegations.

It is further contended by Defendants that the CCPA claims should be dismissed because Plaintiff did not allege a significant impact to the public.  Defendants are correct that in order to assert a CCPA claim, it must be shown that the alleged unfair or

---

[2]  In so finding, I reject Defendants' claim that Plaintiff does not meet Rule 9(b)'s standards because he does not specifically attribute each misrepresentation.  Plaintiff asserts that Defendants jointly made and disseminated the misrepresentations at issue, and only Defendants possess the information that would enable Plaintiff to delineate their roles more specifically.  *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997) (holding that "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions" resulting from "collective-actions" of related parties); *see also U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (relaxing 9(b)'s standard where facts relating to fraud were within the perpetrator's knowledge); *Hill v. Morehouse Med. Assoc. Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (same).

deceptive trade practice "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).  Here, however, I find that Plaintiff has shown a significant public impact, even though his class allegations have been dismissed.

The complaint alleges that Defendants "engaged in an extensive advertising and marketing campaign in support of the *Oblivion* game".  The representations at issue are alleged to have occurred, among other places, on "an online advertisement" on "numerous websites such as Amazon.com and Gamestop.com.  (Compl. ¶¶ 11-14.)  It also alleges that "[a]s a result of Defendants' advertisements and marketing efforts, consumers purchased the *Oblivion* video game with the expectation that it would offer expansive, open-ended gameplay with 'unlimited opportunities' for exploration and character development."  (*Id.* ¶ 20.)  I find from these allegations that Plaintiff is not asserting merely a private wrong, as Defendants argue. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-CV-00970, 2011 WL 3799030, at *3 (D. Colo. Aug. 26, 2011) (finding that "significant public impact" existed where defendant "by directing its advertising at the market generally, implicated not only [plaintiff], but the public as well"); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 150 (Colo.2003) (finding that a developer's widespread advertisements of untrue facts had a significant public impact).  I also find, and Defendants do not dispute, that the other elements of a CCPA claim have been met.  *See Hall*, 969 P.2d at 234.

I now turn to the omission claim, noting that although it is pled as a fraud claim, Plaintiff states that he is alleging that Defendants' omissions of material fact constitute a

deceptive business practice under the CCPA.  (Pl.'s Opp. to Defs.' Renewed Mot. to

Dismiss ["Pl.'s Opp."] at 8.)  Defendants first argue that dismissal of this claim is

warranted as they did not have a duty as a matter of law to disclose the existence of the

alleged Animation Defect.  I note that Judge Kane of this court held in a CCPA claim

that "[t]here can be no failure to disclose absent a duty to disclose".  *Francis v. Mead*

*Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 5313540, at *5 (D. Colo. Dec. 17,

2010).  He further stated that "[g]enerally, 'a defendant has a duty to disclose to a

plaintiff with whom he or she deals material facts that in equity or good conscience

should be disclosed."  *Id.* at *5 (quotation and internal quotation marks omitted).

        In this case, I find that the Animation Defect is material, as Plaintiff alleges that its

existence "significantly decreases the value of the *Oblivion* game to consumers" and

that had Plaintiff known of this defect prior to purchase, he would not have purchased

the game or wold have paid less money for the game.  (Compl. ¶¶ 39-40, 45, 66.)  I

further find it is reasonable to assume that this defect should in equity or good

conscience have been disclosed.  (*See* Compl. ¶ 75) ("Plaintiff. . . reasonably expected

that the *Oblivion* video game would be released without major undisclosed defects and

glitches" and "[t]his is a reasonable and objective consumer expectation for the *Oblivion*

video game given Defendants' representations.")  As noted in *Carideo v. Dell, Inc.*, 706

F. Supp. 2d 1122, 1133 (W.D. Wash. 2010), when "'a manufacturer has superior

information regarding defects that are not readily ascertainable to customers, it has a

duty to disclose that information.'" (quotation omitted).  "Plaintiffs have pleaded that Dell

was in a superior position to know the facts about the hidden defects in the computers

-14-

. . ., and common sense dictates that the defects alleged by Plaintiffs are not of the sort readily ascertainable to the average customer." *Id.* (quotations omitted).

Defendants, however, point to rulings from California courts which have held in the context of California state consumer protection statutes that there is no duty to disclose a defect that manifests after the expiration of a warranty.  As noted by the Ninth Circuit, "[t]he failure to disclose a defect that might, or might not, shorten the effective life span of [a product] that functions precisely as warranted throughout the terms of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under" state consumer protection statutes.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026-27 (9th Cir. 2008) (affirming grant of motion to dismiss deceptive business practices count based on alleged failure to disclose allegedly defective automobile engine head gasket) (quoting *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006)); *see also Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 608-09 (9th Cir. 2012) (affirming dismissal of claim relating to alleged defect in component of IBook G4 computer that wore out or broke over time at a rate faster than consumers would reasonably expect, as "the defect is not alleged to have any effect on the iBook G4's functionality until it fails. . . .[a]dopting Vitt's theory would effectively extend Apple's term warranty . . . based on subjective consumer expectations").[3]

---

[3]  Defendants also rely on *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir.1986). I find that case inapposite as its holding was made in the context of an express warranty claim which is not asserted here.

I first note that the case law cited by Defendants, even if applicable, clearly does not warrant dismissal of the CCPA claims based on affirmative misrepresentations. The Ninth Circuit in *Vitt* made clear that "there is no duty to disclose that a product may fail beyond its warranty period *absent an affirmative misrepresentation*". 469 Fed. App'x at 608 (emphasis added). I previously found for purposes of the motion to dismiss that Plaintiff has alleged affirmative misrepresentations. I also note that the cases relied on by Defendants dealt with situations where the defect had arisen only after the warranty expired. The complaint in this case does not state when the defect first occurred and whether it was within the 90 day warranty period. Without information about whether the defect occurred outside the warranty period, dismissal also would not be appropriate on that ground.

In any event, I do not find these cases persuasive as to the CCPA, and believe that the Colorado Supreme Court would not follow them. The basis for the holding of the above cases was the California state court's opinion in *Daugherty* which discusses the California Consumers Legal Remedies Act ["CLRA"]. The CCPA is not co-extensive with the CLRA, which the Colorado Supreme Court has construed broadly. It stated "that 'in determining whether conduct falls within the purview of the CCPA, [the court] should ordinarily be assumed that the CCPA applies to the conduct'" given "'the strong and sweeping remedial purposes of the CCPA.'" *Crowe v. Tull*, 126 P.3d 196, 202 (Colo. 2006) (quotation omitted).

Consistent with this broad construction of the CCPA, it has been held to apply to subsequent purchasers of a home who complained of misrepresentations and omission

of material information regarding the soundproofing of a condominium unit, even though the implied warranty did not apply to that purchaser. *Williams v. BCORP, Inc.*, No. 02 CV 3149, 2004 WL 3607958, at *2 (Colo. Dist. Ct. 2004). In so holding, there was no discussion or inquiry as to whether there was an express warranty that covered the alleged defects or whether it had expired. Thus, this issue did not appear to be relevant to the court's holding.

I also note that the United States District Court for the Western District of Washington has declined to follow *Dell* and its progeny, stating that Dell did not show "that the principle articulated in *Daugherty* and its progeny extends with equal force to Washington law." *Carideo*, 706 F. Supp. 2d at 1134. It noted that California's and Washington's consumer protection statutes "are not co-extensive." *Id.* It further held that "[o]rdinarily, under [Washington's consumer protection act], '[w]hat constitutes an unfair and deceptive act or practice is a question for the fact finder,' . . . and a party's failure to disclose material facts may give rise to a [consumer protection act] violation." *Id.* at 1134-35 (quotations omitted). The Colorado Court of Appeals has indicated that Washington's consumer protection legislation is similar to the CCPA. *One Creative Place, LLC v. Jet Center Partners, LLC*, 259 P.2d 1287, 1289 (Colo. App. 2011).

Finally, I find persuasive the decision in *Matthews v. American Honda Motor Co., Inc.*, No. 12-60630-CIV, 2012 WL 2520675, at * 3 (S.D. Fla. June 6, 2012). It stated that "Florida courts have recognized that [a claim under the Florida Unfair and Deceptive Trade Practice Act] is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value." *Id.* It then found that the plaintiff

had adequately alleged that the defendant had "committed an unfair and/or deceptive trade practice" by alleging that it had knowingly failed to disclose a latent defect causing pain discoloration and delamination in regard to his Honda vehicle, even though the express warranty had expired.  *Id.*

In so finding, *Matthews* rejected Honda's argument that the claim "impermissibly attempts to revive and recast a warranty claim", noting that the plaintiff did not "allege that Honda breached any warranty", nor did he seek "to recover the costs required to repair the defect, as a typical warranty claim would."  2012 WL 2520675, at * 3.  Rather, the plaintiff alleged "that Honda committed an unfair and/or deceptive trade practice, and her allegation that Honda knowingly failed to disclose the latent paint defect takes this case outside of warranty law."  *Id*.

Based on the foregoing, I reject the argument that the omission claim should be dismissed because Defendants had no duty to disclose the Animation Defect.

Finally, Defendants argue that the omission-based CCPA claim should be dismissed under Rule 9(b) because the complaint only offers generalized allegations and conclusions of law.  I disagree.  The complaint sets out in detail the Animation Defect, how it impacts the ability to play the game, and the fact that despite its knowledge of the Defect, Defendants "continue to sell the *Oblivion* video game" without notifying past or future purchasers" of the Defect."  (Compl., ¶¶ 21-37, 77.)  It also alleges that "Plaintiff. . . reasonably expected that the *Oblivion* video game would be released without major undisclosed defects and glitches" and "[t]his is a reasonable and objective consumer expectation for the *Oblivion* video game given Defendants'

-18-

representations." (*Id.* ¶ 75.)  Further, it alleges that "[t]he facts concealed or not

disclosed by defendants . . . are material in that a reasonable consumer would have

considered them to be important in deciding whether to purchase" the video game or

pay a lesser price for it.  (*Id.*, ¶ 79.)  Finally, it alleges that "Defendants concealed or

failed to disclose the true nature of the *Oblivion* video game and the Animation Defect in

order to induce Plaintiff . . . to purchase" the game, that he "justifiably relied on the

omission to [his] detriment", and that "Plaintiff . . . could not reasonably have been

expected to learn or discover the existence of the Animation Defect or its crippling effect

on the gameplay of the *Oblivion* video game prior to purchase."  (*Id.*, ¶¶ 78, 80.)  These

are not mere "generalized allegations with respect to consumer expectations" that would

require dismissal under Rule 9(b).  *See Hovsepian v. Apple, Inc.*, No. 08 Civ. 5788,

2009 WL 2591445, at *3 (N.D. Cal. Aug. 21, 2009).

        In conclusion, Defendants' motion to dismiss is denied as to Plaintiff's first claim

for violation of the CCPA and third claim for fraudulent omission.

                    3.    Breach of Implied Warranty Claim

        Defendants next argue that the Complaint fails to state a claim for breach of

implied warranty of merchantability ("Count III") because *Oblivion* admittedly remains fit

for its ordinary purpose after the manifestation of the alleged Defect.  Plaintiff contends,

on the other hand, that *Oblivion* is not fit for its "intended use" of open ended game play

as he was "forced to abandon his saved game" after 200 hours of gameplay using a

single game character.  (*See* Compl. at ¶¶ 48-50, 72.)

Turning to my analysis, Colo. Rev. Stat. § 4-2-314 provides that a warranty "that goods shall be merchantable is implied in a contract for their sale."  In this context, "merchantability means that the goods are fit for the ordinary purposes for which such goods are used."  *Elvig v. Nintendo of Am., Inc.*, No. 08–cv–02616, 2010 WL 3803814, at *5 (D. Colo. Sept. 23, 2010).

Defendants argue that the implied warranty of merchantability does not "'impose a general requirement that goods fulfill the expectation of the buyer'" but instead "'provides for a minimum level of quality'" limited to "mere functionality."  Defendants cite *Hughes v. Panasonic Consumer Elec. Co.*, No. 10 Civ. 846, 2011 WL 2976839, at **22-23 (D. N.J. July 21, 2011) (*quoting Berenblat v. Apple, Inc.*, No. 08 Civ. 4969, 2009 WL 2591366, at *2 (N.D. Cal. Aug. 21, 2009)), and other cases.  In *Hughes*, the Court granted the defendant's motion to dismiss the plaintiffs' claim that defendant breached its implied warranty of merchantability because its televisions contained a defect which caused the picture quality to rapidly deteriorate.  2011 WL 2976839, at *23.  *Hughes* held that:

> While plaintiffs allege that the Televisions are defective, plaintiffs do not allege that the Televisions are inoperable or otherwise are not in working condition. Indeed, *the Amended Complaint does not contain any explicit allegation that plaintiffs can no longer use their Televisions* – in other words, that they are no longer generally fit for their ordinary purpose. Although the Televisions may not have fulfilled plaintiffs' expectations, plaintiffs do not allege that the Televisions fail to provide a minimum level of quality, which is all that the law requires.

*Id.* (emphasis added) (internal citation omitted).

I decline to follow *Hughes* and the cases cited by Defendants and instead find the *Francis* case persuasive.  Notably, while Defendant cited to and relied on *Francis* in connection with other claims, it pointedly ignored the case in arguing that the implied warranty claim should be dismissed.  In *Francis*, Judge Kane noted that in addition to being "fit for the ordinary purpose for which such good is used", the Colorado statute regarding implied warranty requires that the product "conform to the promises or affirmations of fact made on the container or label."  2010 WL 5313540, at 7 (citing Colo. Rev. Stats. § 4-2-314(2)(c) and (f)).  Thus,  he found that even though the product at issue there, baby formula, was probably fit for its ordinary purpose—to provide a baby with a healthy substitute for breast milk—he found that "the question of implied warranty in this case more accurately turns on whether the promises or affirmations on the product's label conforms with the product itself."  *Id.*

Applying that analysis here, Plaintiff alleges that the product description for the *Oblivion* video game states that it features "free-form gameplay" in which players can "explore the vast world in search of their own unique challenges."  (Compl. ¶ 13.)  He also alleges that "[a]t the time Defendants designed, manufactured, and sold" *Oblivion*, they knew of the uses" for which "it was intended, and impliedly warranted that it would be of merchantable quality and fit for its intended use."  (*Id.*, ¶ 71.)  Finally, it is alleged:

> Defendants' implied warranty included that the *Oblivion* video game would offer free-form, open-ended, expansive gameplay, and be free of inherent defects that prevent such gameplay.  In actuality, the *Oblivion* video game suffered from the Animation Defect" such that it "was not of merchantable quality or fit for its intended use.

(*Id.*, ¶ 72.)

Construing the allegations in the light most favorable to the Plaintiff, I find that he has shown that the promises or affirmations as to the *Oblivion* video game as to open-ended or free-form play did not conform with the video game itself.  He has alleged that he is unable to use *Oblivion* in its intended manner because of the Animation Defect. Accordingly, I also deny Defendants' motion to dismiss as to this claim.

         4.    <u>Unjust Enrichment Claim</u>

Finally, Defendants argue that the unjust enrichment count ("Count IV") is duplicative of Count I and should be dismissed.  It cites to the *Francis* decision by Judge Kane which held that an unjust enrichment count should be dismissed as duplicative when it seeks recovery for the same wrongful conduct and the same damages as in a CCPA claim.  2010 WL 5313540, at *9.

Here, in contrast to *Francis*, Plaintiff asserts that the damages sought are different.  In his claim for unjust enrichment, Plaintiff "seeks the imposition of a constructive trust on and restitution of the proceeds Defendants received as a result of their [unlawful] conduct," a form of relief not allowed under the CCPA.  (Compl., ¶ 87.) In contrast, Plaintiff seeks only actual damages and injunctive relief under his CCPA claims.  I find for purposes of the motion to dismiss that the "equitable remedy" sought by his unjust enrichment claim appears to be separate from any available remedy at law under the CCPA claim.  *See Colorado Found, Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188, 1200 (D. Colo. 2002) (upholding plaintiffs' unjust enrichment remedy where it "is separate and independent from [p]laintiffs' remedy at law"); *Harris Grp. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) (unjust enrichment claim is appropriate where

the objective of available legal remedies is different).  Accordingly, the motion to dismiss

is also denied as to this claim.

III.    <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss (ECF No. 36) is **DENIED**.

Dated:  September 27, 2013

BY THE COURT:

<u>s/ Wiley Y. Daniel</u>
Wiley Y. Daniel
Senior United States District Judge